*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0019p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

    *v.*

RICKEY LEE MARTIN, JR.,

    *Defendant-Appellant.*

No. 03-2537

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-80492—Denise Page Hood, District Judge.

Argued: December 9, 2004

Decided and Filed: January 13, 2005

Before: KENNEDY, MARTIN, and MOORE, Circuit Judges.

---

## COUNSEL

**ARGUED:** David C. Tholen, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** David C. Tholen, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

    KENNEDY, Circuit Judge. Defendant Rickey Martin was convicted after a jury trial of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On appeal, defendant challenges the district court's denial of his motion to suppress the weapon, and he challenges the sufficiency of the evidence. Because the district court properly ruled on the suppression motion and because sufficient evidence exists upon which to uphold defendant's conviction, we **AFFIRM** defendant's conviction and sentence.

## BACKGROUND

    Defendant Rickey Martin's conviction stems from an attempt to arrest him for trespassing on Inkster Public Housing Authority property. Because the housing authority was a high crime area, it entered into an agreement with the Inkster Police department. Under the agreement, the police department agreed to dedicate two officers to the housing authority full-time, and the authority agreed to pay the officers' salaries.

Officers Snow and Shafer were assigned to patrol the housing authority under the agreement.  These officers were authorized to issue "Notice of Trespass" or "disbarment" letters.  These letters informed non-residents that they were barred from the housing authority's property for a one-year period.  Defendant had previously received a disbarment letter from the officers when he was arrested on housing authority property.

On March 12, 2002, while patrolling a street adjacent to housing authority property by car, the two officers spotted the defendant and another person who had also received a disbarment letter walking on a sidewalk.  The officers pulled their car over to the sidewalk with the intention of arresting the defendant and his companion for trespassing.  Rather than submitting to the officers' commands to stop, defendant ran, and Officer Shafer chased him.  During the chase, defendant tossed away a revolver.  After cornering him with the aid of other officers, Officer Shafer was able to detain the defendant and place him under arrest.

At trial, Officer Shafer testified that he observed defendant "bobbing a revolver" during the chase.  App. 748-49.  In addition, Officer Shafer testified that he saw defendant toss a revolver away during the chase.  App. 753.  Officer Snow testified that he retrieved the revolver after Officer Shafer told him where to look for it.  App. 853-58.  Finally, Officer Shafer testified that after Officer Snow retrieved the revolver, Officer Shafer identified it as the one defendant tossed.  App. 764.  The prosecution also offered testimony from an expert who testified that the firearm in question was manufactured in Brazil, imported into Georgia, and that it crossed state lines to arrive in Michigan.  App. 1077-78.  Both parties stipulated that the defendant had been previously convicted of a felony.  App. 1084-85.

## ANALYSIS

A.      Defendant abandoned his gun; hence, the district judge properly admitted it into evidence.

Because the district court found that the sidewalks on which defendant was walking were not part of the housing authority's property and that the officers lacked reasonable suspicion to justify a *Terry* stop, it turned to the abandonment of the gun during the chase in making its ruling.  Although the United States asks that we reexamine the issue of whether the sidewalk was the property of the housing authority or a public sidewalk, we decline to do so since we agree with the district court's alternative basis that the gun was abandoned.

This case is controlled by the Supreme Court's holding in *California v. Hodari D.*, 499 U.S. 621 (1991).  In *Hodari D.*, the Supreme Court established the rule that when a suspect refuses to submit to a show of authority by the police, the suspect is not seized by the police until such time as he or she submits or is forced to submit to police authority.  *Id.* at 626.  As such, because a seizure does not occur when a mere show of authority occurs, but only when one yields to a show of authority, the fourth amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure.  *Id.* at 629.  This rule applies, the Court stated, even when the show of authority is an unlawful one.  *Id.* at 624, n.1.

Appellant acknowledges *Hodari D.* but attempts to distinguish it, arguing that lower courts have carved out an exception to the rule announced in *Hodari D.*  That exception, according to appellant, is that abandonment cannot result from unlawful police conduct.  App. Br. p. 7.  Appellant cites several cases that appear to support the general rule that post-seizure abandonment cannot result from police misconduct.  *See United States v. Flynn*, 309 F.3d 736, 738 (10th Cir. 2002); *United States v. McDonald*, 100 F.3d 1320, 1327-29 (7th Cir. 1996); *United States v. Ward*, 961 F.2d 1526, 1535 (10th Cir. 1992); *United States v. Lewis*, 921 F.2d 1294, 1302-03 (D.C. Cir. 1990); *United States v. Koessel*, 706 F.2d 271, 274 (8th Cir. 1983).  However, all of those cases involve factual situations in which the defendant submitted to police authority prior to the abandonment taking place.

This rule on post-seizure abandonment is very different from the rule in *Hodari D.* and the situation in this case.  *Hodari D.* is very clear that if no seizure has occurred, abandonment can occur.  *Hodari D.*, 499 U.S. at 626.  This ruling in *Hodari D.* holds true even if the attempted seizure or show of authority

constitutes police misconduct. *Id.* at 624, n.1. If we were to hold as defendant requests and recognize an exception to *Hodari D.* for pre-seizure abandonments caused by police misconduct, this exception would create a dichotomy in our jurisprudence based on a factor the Supreme Court indicated was irrelevant. Furthermore, the concerns about police misconduct leading to an abandonment in cases where a defendant has already been seized go to the very heart of the Fourth Amendment. In the context of pre-seizure abandonment, those same Fourth Amendment concerns cannot be present as no seizure has taken place. Therefore, we decline to adopt appellant's proposed exception to the pre-seizure abandonment rule.[1]

The district court correctly held that defendant did not submit to the show of authority made by the officers. Instead of submitting, he attempted to flee. In the process of fleeing, he discarded his revolver. Because he had not been seized when he discarded his revolver, under *Hodari D.*, he abandoned it, and it is irrelevant whether police misconduct caused the abandonment.

B.      Sufficient evidence exists to support defendant's conviction.

In reviewing the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992). We do not re-weigh the credibility of the evidence in evaluating its sufficiency; we merely ascertain if sufficient evidence exists on each element of the crime so that a jury could convict the defendant. *See Jackson*, 443 U.S. at 318-19.

To convict a defendant under 18 U.S.C. § 922(g), "the government must prove beyond a reasonable doubt: (1) the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and (3) that the possession was in or affecting interstate commerce." *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir. 1998) (internal quotations omitted); 18 U.S.C. § 922(g).

As to the first element, both parties stipulated that the defendant had been previously convicted of a felony. App. 1084-85. The court received that stipulation into evidence. App. 1084-85. This stipulation is conclusive evidence of the first element.

The prosecution also offered evidence on the second element. Officer Shafer testified that he observed defendant "bobbing a revolver" during the chase. App. 748-49. In addition, Officer Shafer testified that he saw defendant toss the revolver to the side during the chase. App. 753. Officer Snow testified that he retrieved the revolver. App. 853-58. Officer Shafer testified that after Officer Snow retrieved the revolver, Officer Shafer identified it as the one defendant tossed. App. 764. From this testimony, sufficient evidence exists to uphold a conviction on this second element.

Finally, as to the third element, the prosecution offered testimony from an expert in identifying the date of manufacture of firearms and identifying an interstate nexus of firearms. App. 1076. That expert testified that the firearm in this case came from Brazil, was imported into Georgia, and crossed state lines to arrive in Michigan. App. 1077-78. This expert testimony provides sufficient evidence that the firearm in question had a nexus with interstate commerce.

Defendant argues that some of the officers' statements contradicted each other and that some of the scientific evidence (e.g. the lack of fingerprints) cast doubt on defendant's possession of the revolver. These arguments go to the weight of the evidence, not to whether evidence exists on each element of the offense. We need not resolve any perceived contradictions in the testimony as a fact-finder could easily have determined that any differences in the officers' testimony came from seeing the defendant at different angles

---

[1] Our holding here today is in accord with this court's decision in *United States v. Collis*, 766 F.2d 219, 220-22 (6th Cir. 1985). *Collis* is only marginally useful, however, as it is a pre-*Hodari D.* case.

and at different times during the encounter.  The evidence of guilt was sufficient for a jury to convict defendant.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.