PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――

No. 09-3391

―――――

UNITED STATES OF AMERICA,
                                        Appellant

v.

MAURICE RAY DUPREE

―――――

On Appeal from the United States District Court
for the District of Eastern Pennsylvania
(D.C. No. 08-cr-00280)
District Judge: Honorable Cynthia M. Rufe

―――――

Argued April 13, 2010
Before: FISHER, HARDIMAN and COWEN, *Circuit Judges*.

(Filed: August 6, 2010)

Robert A. Zauzmer (Argued)
Jose R. Arteaga
Office of United States Attorney
Suite 1250
615 Chestnut Street

Suite 1250
Philadelphia, PA 19106-0000
    *Attorneys for Appellant*

Brett G. Sweitzer (Argued)
Robert Epstein
Kai N. Scott
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106-0000
    *Attorneys for Appellee*

———

OPINION OF THE COURT

———

HARDIMAN, *Circuit Judge*.

This appeal requires us to consider the question of waiver. The issue arises in the context of a criminal case in which Defendant Maurice Ray Dupree prevailed on a motion to suppress evidence after the District Court determined he had been seized without reasonable suspicion. In the District Court, the Government argued that one issue was dispositive: whether Dupree was actually seized when he was first grabbed by police. Before this Court, the Government concedes that point but urges reversal for two new—and quite different—reasons. I would

hold that both of these new arguments were waived. Although Judge Fisher does not share my view regarding waiver, he would affirm the District Court on the merits. Accordingly, we will affirm.

## I.

## A.

On the evening of January 16, 2008, Philadelphia Police Officers Brian Mabry and Steven Shippen were on patrol in a marked police cruiser when they received a report of gunshots near 10th and Oxford Streets. The shooter was described as a black male, approximately five feet, eight inches tall, wearing blue jeans and a black, hooded sweatshirt. A later report indicated that the suspect had fled eastward on Oxford Street.

The officers drove approximately one mile to the vicinity of the shooting. As they crossed Marshall Street, the officers noticed a man, later identified as Dupree, slowly riding a bicycle toward Oxford Street. Although Dupree fit the suspect's description, Shippen did not stop because the reports said nothing about the suspect riding a bicycle.

Moments later, Mabry mentioned that Dupree resembled the suspect's description, prompting Shippen to return to Marshall Street. As the officers approached Dupree, he continued to ride his bicycle slowly in their direction. After Shippen stopped the cruiser, Mabry alighted from the vehicle, grabbed the approaching Dupree by the arm, and asked: "Can I talk to you for a minute?" Although Mabry's grasp stopped

3

Dupree's movement, Dupree initially remained perched on the bicycle.

At this point, the parties' otherwise consistent versions of events diverge. According to the Government, Dupree twisted away, "slammed" his bicycle into Mabry's legs, and fled on foot. Dupree concedes that he broke free and fled, but denies intentionally throwing his bicycle at Mabry. Instead, he claims the bicycle inadvertently slid into Mabry as he dismounted.

Regardless of how Dupree extricated himself from Mabry's grasp, he fled on foot and the officers gave chase. With the officers close behind, Dupree circled a home on Marshall Street several times before pulling a loaded, .357 caliber revolver from his waistband and discarding it into a flowerpot. Mabry stopped to recover the weapon while Shippen pursued and eventually arrested Dupree after a brief struggle.

B.

Following his arrest, Dupree was charged with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Dupree moved to suppress the gun, contending that because Mabry lacked reasonable suspicion to grab him on Marshall Street, the weapon was the fruit of an unlawful seizure. The Government opposed the motion, arguing that under the Supreme Court's decision in *California v. Hodari D.*, 499 U.S. 621 (1991), Dupree was not seized until *after* the chase, when Shippen subdued him. Because Dupree discarded the gun before he was seized, argued the Government, the abandoned firearm was not subject to suppression.

4

The District Court rejected the Government's argument. The Court first observed that "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," constitutes a Fourth Amendment seizure. *United States v. Dupree*, No. 08-280-1, 2009 WL 1475276, at *3 (E.D. Pa. May 27, 2009) (quoting *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006)). Accordingly, the District Court held that Dupree was seized unlawfully when Mabry first grabbed him on Marshall Street. The District Court then quoted *United States v. Coggins*, 986 F.2d 651, 653 (3d Cir. 1993), and held: "when the abandonment of property is precipitated by an unlawful seizure, that property also must be excluded." The District Court's holding was consistent with "the Government's concession that if the initial stop of Dupree is found to have been a seizure, then the gun must be suppressed as the seizure's illegal proceeds." *Dupree*, 2009 WL 1475276, at *6.

The Government filed a motion for reconsideration, framing the issue for the District Court as follows: "the suppression issue in this case turns on a single question—was . . . Dupree seized, within the meaning of the Fourth Amendment, when . . . Mabry grabbed Dupree for a mere two seconds before Dupree broke away and attempted to flee?" The Government then reprised the argument it made at the suppression hearing, *viz.*, that under *Hodari D.*, the Fourth Amendment was not implicated because Dupree was not seized until well after he dropped the firearm. The Government also argued—for the first time and in the alternative—that Dupree committed an assault when he intentionally "slammed" his bicycle into Mabry. Even if Mabry's initial grab did constitute a seizure, contended the

5

Government, Dupree's new crime gave the officers probable cause to arrest and thereby purged the taint of Mabry's unlawful seizure. The District Court denied the motion for reconsideration.

## II.

The Government now appeals the District Court's orders granting Dupree's motion to suppress and denying the Government's motion for reconsideration. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction under 18 U.S.C. § 3731.

The Government's appeal—in diametric opposition to the argument it twice made before the District Court—begins with the concession that Mabry's initial grab of Dupree was an illegal seizure under the Fourth Amendment. Notwithstanding the illegal seizure, the Government urges reversal for two reasons: (1) even if Dupree's flight was prompted by Mabry's unlawful seizure, the policies underlying the exclusionary rule and the fruit-of-the-poisonous-tree doctrine do not require suppression of evidence voluntarily discarded by a fleeing defendant; and (2) Dupree's alleged assault of Mabry provided probable cause to arrest and thereby purged the taint of the unlawful seizure. Although the Government's second argument was raised in its motion for reconsideration in the District Court, its principal argument was never raised prior to this appeal. Dupree asserts that both arguments were waived. Alternatively, he argues that both fail on the merits.

6

We examine the District Court's factual findings for clear error and review *de novo* the District Court's legal conclusion that Dupree's firearm must be suppressed. *See United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010).

## III.

I begin with the well-established proposition that arguments not raised in the district courts are waived on appeal.[1] *See Steagald v. United States*, 451 U.S. 204, 209 (1981). This general principle applies fully to criminal cases involving

---

[1] Case law reflects some confusion as to how to characterize suppression arguments that were never made to a district court. Some decisions refer to unraised arguments as "waived," while others deem them "forfeited." *Compare, e.g.*, *United States v. Stearn*, 597 F.3d 540, 551 n.11 (3d Cir. 2010) *with, e.g.*, *United States v. Amuny*, 767 F.2d 1113, 1122 (5th Cir. 1985). As the Supreme Court has explained, "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Under this definition, the failure to raise a suppression argument in a district court would seem to constitute a "forfeiture." In *United States v. Rose*, however, we acknowledged *Olano*'s teachings but nonetheless characterized suppression arguments not raised below as "waived" in light of Congress's post-*Olano* revisions to Rule 12 of the Federal Rules of Criminal Procedure, which retained the waiver language. 538 F.3d 175, 183-84 (3d Cir. 2008).

motions to suppress. *See id*.; *United States v. Stearn*, 597 F.3d 540, 551 n.11 (3d Cir. 2010). Thus, when a party seeks reversal of a suppression ruling on appeal, any arguments not raised in the district court are waived absent a showing of good cause, and plain error review does not apply.[2] *United States v. Rose*, 538 F.3d 175, 184 (3d Cir. 2008); *see also* Fed. R. Crim. P. 12(e). Just as a defendant may not introduce new "theories of suppression" on appeal that were never argued below, *United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005), the Government is "subject to the ordinary rule that an argument not raised in the district court is waived on appeal[,]" *Stearn*, 597 F.3d at 551 n.11 (citing *Steagald*, 415 U.S. at 209).

This raise-or-waive rule is essential to the proper functioning of our adversary system because even the most learned judges are not clairvoyant. *See United States v. Nee*, 261 F.3d 79, 86 (1st Cir. 2001). Thus, we do not require district judges to anticipate and join arguments that are never raised by the parties. *See United States v. Griffiths*, 47 F.3d 74, 77 (2d Cir. 1995). Instead courts rely on the litigants not only to cite relevant precedents, but also to frame the issues for decision. *See id*. ("The government was required to offer some argument or development of its theory. It failed to do so, and has therefore waived the issue.").

---

[2] Of course, a different scenario is presented when a party asks us to *affirm* a district court's suppression ruling because we may affirm for any reason supported by the record. *See United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005).

8

Moreover, "[a] fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal[.]" *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009). Rather, a party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999). Mindful of the important purposes that animate our waiver jurisprudence, I turn now to Dupree's contention that the Government waived the two arguments it presses on appeal.

A.

The Government's principal argument is that the exclusionary rule and the fruit-of-the-poisonous-tree doctrine do not automatically apply following a Fourth Amendment violation. According to the Government, application of the exclusionary rule requires us to compare the substantial social costs that attend the suppression of probative physical evidence against the benefits in deterring Fourth Amendment violations. Arguing that suppression of Dupree's weapon would offer only minimal deterrence while imposing considerable social costs, the Government urges us to find the exclusionary rule inapplicable where, as here, a defendant who has been illegally seized subsequently breaks free from police and voluntarily discards evidence while fleeing.

The Government's reasoning relies heavily on recent Supreme Court cases that, when read together, arguably suggest as much. *See, e.g.*, *Herring v. United States*, 129 S. Ct. 695, 700-03 (2009); *Hudson v. Michigan*, 547 U.S. 586, 591-93

(2006).  As the Government argues, *Herring* cautions us  to apply the exclusionary rule only when its potential for deterring future police misconduct outweighs the social costs incurred by suppressing the evidence.  *See* 129 S. Ct. at 700-03.  Whether the fruit-of-the-poisonous-tree doctrine requires suppression in a given case can turn on similar variables.  *See Hudson*, 547 U.S. at 593.

Irrespective of the merits of the Government's argument, it suffers from a fatal defect: it was never presented to the District Court.  It neither appears in the Government's briefs, nor was raised at the suppression hearing.  Indeed, when initially opposing Dupree's suppression motion in the District Court, the Government argued only that suppression was not required because Mabry's initial grab of Dupree did not constitute an unlawful seizure.  Whether for strategic reasons or through inadvertence, the Government did not argue that even if Mabry's grab of Dupree was an unlawful seizure, the fruit-of-the-poisonous-tree doctrine did not apply.

At oral argument, the Government attempted to finesse its failure to raise this argument in the District Court by conceding that its language "could have been more precise." The Government also conceded that although cases such as *Herring* and *Hudson* are central to the legal argument it now presses on appeal, neither case was cited to the District Court. This omission is telling.

To understand the argument the Government actually made to the District Court, I review what counsel for the Government said at the suppression hearing.  There, the

10

Government argued exclusively that suppression was not required because Mabry's grab of Dupree did not constitute a seizure. In the words of the prosecutor:

> But, now a question that we have before us . . . is whether or not the defendant was seized [by Mabry] on Marshall Street. If we can say that at this point in time the defendant was arrested, the case ends at that point in time . . . The problem that we have here is that the arrest did not occur on Marshall Street, but occurred [later].
>
> . . .
>
> If [Dupree] is grabbed and he flees you don't have, whatever term you want to use, custody, seizure, or arrest, you don't have it. If you don't have it, then you don't have the suppression issue that . . . is before us . . . .

Because the officers had probable cause to arrest Dupree after seeing him discard the gun during the chase, argued the Government, Shippen's subsequent tackle and arrest of Dupree was reasonable under the Fourth Amendment. At no point, however, did the Government argue that the exclusionary rule should not apply even if Dupree had been seized by Mabry because the costs of suppression would outweigh any deterrent benefit.[3]

_____

[3] Notably, the District Court's memorandum opinion does not mention the policy-based argument the Government presses

11

Nor did the Government raise its new argument when seeking reconsideration in the District Court. Instead, the Government's motion for reconsideration essentially restated its unsuccessful argument that Dupree was not seized until he was tackled and arrested by Shippen. As the Government's motion for reconsideration straightforwardly asserted: "the suppression issue in this case turns on a single question—was . . . Dupree seized, within the meaning of the Fourth Amendment, when . . . Mabry grabbed Dupree for a mere two seconds before Dupree broke away and attempted to flee?" Though the Government now concedes that Dupree was seized when Mabry initially grabbed him, it no longer thinks that the "suppression issue in this case turns on a single question"—or at least not the *same* "single question" that it presented to the District Court. Having framed the legal issue so squarely below, the Government may not now paint a different picture on appeal.[4]

The Government responds to Dupree's waiver argument by noting that it cited *Hodari D.* repeatedly in the District Court. But the Government ignores the fact that it cited *Hodari D.* only

on appeal. *See United States v. Dupree*, No. 08-280-1, 2009 WL 1475276 (E.D. Pa. May 27, 2009).

[4] The Government's concession on appeal that Mabry's grab was a seizure is understandable in light of the Supreme Court's statement in *Hodari D.* that the "laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful" constitutes a seizure. 499 U.S. 621, 626 (1991); *see also United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006).

12

to support its argument that Dupree was not seized when grabbed by Mabry.  Now, by contrast, the Government admits that Dupree was seized and instead relies on *Hodari D.* to argue that the exclusionary rule should not apply.[5]

---

[5] The language from *Hodari D.* on which the Government now relies provides:

> To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity.  If, for example, [the police officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.

*Hodari D.*, 499 U.S. at 625.  Based on this passage, our dissenting colleague would hold that "evidence discarded by a fleeing defendant after an unlawful seizure does not make that evidence per se inadmissible" because the evidence is not recovered during the course of the illegal arrest.

Accepting the dicta from *Hodari D.* at face value, additional analysis is still required to determine whether the weapon discarded by Dupree must be suppressed.  The fruit-of-the-poisonous-tree doctrine applies to evidence recovered both during and *as a result of* a Fourth Amendment violation.  *See Murray v. United States*, 487 U.S. 533, 536-37 (1988).  Thus,

13

It is elementary that Fourth Amendment analysis typically proceeds in three stages. First, we ask whether a Fourth Amendment event, such as a search or a seizure, has occurred. *See United States v. Smith*, 575 F.3d 308, 312-13 (3d Cir. 2009). Next, we consider whether that search or seizure was reasonable. *Id.* If it was not, we then determine whether the circumstances warrant suppression of the evidence. *See Herring*, 129 S. Ct. at 700.

Before the District Court, the Government cited *Hodari D.* only at the first stage, when it argued that no seizure had occurred before Dupree discarded the firearm. On appeal, the Government now cites *Hodari D.* at the final stage, arguing that the exclusionary rule should not apply despite Mabry's unreasonable seizure of Dupree. The Government thus cited *Hodari D.* in the District Court at a wholly different stage of the Fourth Amendment analysis.

As the Government recognized at oral argument, simply citing a case in the District Court is not sufficient to raise all arguments that might flow from it. *See Nee*, 261 F.3d at 86. To

---

assuming that the seizure of Dupree terminated once he fled, we would still be required to determine whether the fruit-of-the-poisonous-tree doctrine requires suppression in this case. Judge Cowen would hold that it does not, based on the Government's argument that the social costs of suppression in such a scenario would outweigh the exclusionary rule's deterrent effect on future Fourth Amendment violations. I express no view on the merits of this argument because it was not raised in the District Court.

preserve the argument that it now makes on appeal, the Government had to do more than broadly reference *Hodari D.*[6] Instead, it had to give the District Court the opportunity to consider the argument it now makes, *i.e.*, whether the policies underlying the exclusionary rule demonstrate that it should apply where, as here, an illegally seized defendant breaks free

[6] It is unsurprising that the Government's mere citation to *Hodari D.* below did not prompt the District Court to consider *sua sponte* the argument the Government makes on appeal. The holding of *Hodari D.* involved whether the officers' actions constituted a seizure in the first instance. *See Hodari D.*, 499 U.S. at 626 ("The narrow question before us is whether, with respect to a show of authority . . . , a seizure occurs even though the subject does not yield."). Because the Supreme Court found that no seizure had occurred *ab initio*, it had no occasion to consider whether either the seizure was reasonable or whether the exclusionary rule should apply. Thus, *Hodari D.* was directly relevant to the argument that the Government made to the District Court—*i.e.*, that suppression was unwarranted because Mabry had not seized Dupree. But *Hodari D.*'s holding provides scant support for the Government's broader, policy-based argument that the exclusionary rule does not apply notwithstanding Mabry's illegal seizure. Though precedents such as *Herring* and *Hudson* clearly bear on that argument, the Government candidly admitted at oral argument that it cited neither of those cases to the District Court. Thus, despite Judge Cowen's suggestion to the contrary, merely citing *Hodari D.* was insufficient to put the District Court on notice of the novel legal argument the Government has raised on appeal.

15

and discards evidence while fleeing.  Because it did not do so, the Government failed to preserve its argument for appeal.[7]

_____

[7] Contrary to Judge Fisher's suggestion, this waiver holding is not predicated on a finding that "the government has forfeited its right to rely on *Hodari D.* by virtue of its concession on appeal that Dupree, unlike Hodari, was seized at the outset of his encounter with the police."  Concurring Op. at 5.  Rather, the Government forfeited its right to make a fruit-of-the-poisonous-tree argument on appeal because it never raised that argument below.

To illustrate this point, an analogy is helpful.  Assume that this case instead involved statements allegedly obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  The rule of *Miranda* applies if two requirements are met: a defendant must be (1) "in custody" and (2) subject to "interrogation" by the Government.  *Id*. at 444; *see also United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999).  If the Government were to cite *Miranda* in the District Court solely for the proposition that Dupree was not "in custody" while eschewing any argument that he was not subject to an "interrogation," one could not persuasively contend that the Government preserved the latter argument for appeal simply by citing *Miranda* in reference to the former.  And like *Miranda*, the Fourth Amendment analysis has discrete components.  Accordingly, I respectfully disagree with Judge Fisher's suggestion that "this case is not one in which the government is . . . pursuing a legal theory it wholly failed to raise below."  Concurring Op. at 5.  That is *precisely* what the Government seeks to do here when it cites *Hodari D.* on appeal to argue that the exclusionary rule should not apply

In sum, the Government now presents a novel and interesting legal argument. Regardless of the merits of this argument, however, it was never raised in the District Court. Accordingly, it was waived. *See* Fed. R. Crim. P. 12(e) (providing that "a party waives any [motion to suppress] defense, objection, or request not raised by the deadline" set by the district court). In *Rose*, we held that waiver of a suppression argument may be excused only for good cause shown. 538 F.3d at 184-85. Because the Government has made no attempt to show good cause, I would hold that it waived its policy argument that the District Court should not have applied the exclusionary rule to suppress Dupree's firearm.

B.

The Government argues in the alternative that the firearm need not be suppressed because Dupree's "intervening and volitional act of throwing his bicycle at Mabry after he was seized created probable cause to arrest" Dupree for assault. The Government does not argue that it presented this independent-crime theory to the District Court when it initially opposed Dupree's suppression motion. Instead, the Government notes that it raised this argument only in its motion for reconsideration.

Dupree responds by citing *United States v. Thompson*, where the Eleventh Circuit held that a suppression argument made by the Government for the first time in a motion for

for policy reasons after citing the case below *only* to argue that Dupree was not seized.

17

reconsideration was waived because the Government provided no justification for its failure to raise the argument in a timely fashion. 710 F.2d 1500, 1504 (11th Cir. 1983). As discussed previously, we recognized a similar rule in *Rose*, holding that under Federal Rule of Criminal Procedure 12(e), "a party waives any [motion to suppress] defense, objection, or request not raised by the deadline" set by the district court absent a showing of good cause. 538 F.3d at 184-85.

Here, the Government waived its independent-crime argument by failing to raise it before the District Court ruled on Dupree's motion to suppress—*i.e.*, by the "deadline" set by Rule 12(e). There is no indication that the Government made any attempt to demonstrate good cause for its failure to raise this argument when it sought reconsideration in the District Court. Nor has the Government argued good cause on appeal. Thus, to the extent that the Government appeals the District Court's order granting Dupree's motion to suppress, this independent-crime argument was waived, and the Government has given us no basis to excuse its waiver.

The Government has also appealed the District Court's order denying its motion for reconsideration, however. Although the Government failed to raise its independent-crime theory when initially opposing suppression, it preserved the argument in the context of its appeal from the District Court's separate order denying its motion for reconsideration.

We review the denial of a motion for reconsideration for abuse of discretion. *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999). The

18

purpose of such a motion is to correct a clear error of law or to prevent a manifest injustice in the District Court's original ruling. *Id.* at 677; *see also Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Such motions "are granted for 'compelling reasons,' such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier." *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) (internal citations omitted). Though "[m]otions to reconsider empower the court to change course when a mistake has been made, they do not empower litigants . . . to raise their arguments, piece by piece." *Id.*

As discussed herein, the District Court granted Dupree's motion to suppress after it found that he was seized without reasonable suspicion when Officer Mabry grabbed him. Nothing about the Government's newly raised independent-crime argument makes this initial ruling by the District Court clearly erroneous as a matter of law. Nor has the Government cited any new evidence. Rather, the District Court's decision to suppress Dupree's weapon was legally correct in light of the facts, law, and arguments raised by the parties at the time of the original motion to suppress. That the Government belatedly articulated an alternative basis for admitting the evidence does not impugn the District Court's original ruling. Accordingly, the District Court's denial of the Government's motion for reconsideration was not an abuse of discretion.

IV.

19

In this appeal, the Government proffers two alternative bases for reversing the District Court's suppression of Dupree's firearm. The Government's principal argument reflects a thoughtful consideration of the Supreme Court's more recent exclusionary rule jurisprudence. We undoubtedly will have occasion to consider that argument in the future, but not in a case, such as this one, where it was never presented to the District Court. For the reasons stated herein and in Judge Fisher's concurring opinion, we will affirm the District Court's orders granting Dupree's motion to suppress and denying the Government's motion for reconsideration.

*United States v. Dupree*, No. 09-3391

COWEN, Circuit Judge, dissenting

One of my colleagues has concluded that the Government waived the argument that it seeks to raise on appeal and has affirmed the District Court's order suppressing the firearm on that ground. My other colleague has concluded that, while the Government has not waived its argument on appeal, the argument lacks merit, and has joined in the decision to affirm. I break from my colleagues on both grounds, concluding that the Government did not waive its argument and that the Government should prevail on appeal. I would reverse the District Court.

I.      BACKGROUND

The facts of this case are fairly straightforward as set forth in Judge Hardiman's opinion. The issues argued by the parties before the District Court and on appeal; however, merit additional elaboration. In the District Court, Dupree moved to suppress evidence of the firearm, contending that the officers lacked reasonable suspicion to stop him, that he was seized within the Fourth Amendment when Officer Mabry grabbed his arm, and that the firearm must be suppressed as fruit of the poisonous tree. The Government argued that the police had reasonable suspicion to stop Dupree and that the seizure did not occur until the police arrested him after he fled. The Government prominently discussed *Hodari D.* in its opposition papers and during oral argument.

The District Court conducted a suppression hearing and subsequently granted Dupree's motion. It held that Officer Mabry seized Dupree without reasonable suspicion when he grabbed Dupree's arm, that the "seizure directly precipitated [Dupree's] flight and abandonment of the firearm," and that the

firearm was fruit of the poisonous tree. The Government moved for reconsideration, arguing in depth that the District Court should deny Dupree's motion under the Supreme Court's instruction in *Hodari D.* The Government excerpted several passages from *Hodari D.* to support its position. The District Court denied the Government's motion concluding that the court did not commit an error of law when it found that Dupree was seized when Officer Mabry grabbed Dupree's arm, and that the gun was the fruit of that seizure (even though Dupree freed himself of that seizure and was no longer in custody when he discarded the pistol).

On appeal, the Government concedes that a seizure occurred, however momentarily, when Officer Mabry grabbed Dupree's arm and that Officer Mabry lacked reasonable suspicion to seize Dupree. *See* Gov't Br. at 14 ("The government acknowledges that at the moment of Officer Mabry's action in grabbing Dupree and stopping his movement on a bicycle, the police had an insufficient basis to stop and frisk Dupree, and that any seizure of his person or possessions at that time would be unlawful."); Gov't Br. at 31 ("[I]t is clear that Officer Mabry's two-second grasp of Dupree, although a seizure for Fourth Amendment purposes, does not taint the admissibility of the handgun recovered during Dupree's flight."). Thus, the District Court's determination that an unlawful seizure occurred when Officer Mabry grabbed Dupree's arm is not at issue on appeal.

The Government's position is that suppression is not merited when evidence is abandoned by a suspect during flight if the suspect fled after a momentary, unlawful physical seizure because the Fourth Amendment does not protect the actions of suspects under these circumstances. The Government relies on the Supreme Court's decision in *Hodari D.* to support its

2

position. Dupree counters that suppression is required under this Court's Fourth Amendment precedent.

## II.     DISCUSSION

### A.     Waiver

Before I address the merits of the Government's argument, it is necessary to address a procedural issue: whether the Government waived or forfeited the argument that it seeks to raise on appeal by its litigation positions below. Judge Fisher has concluded, and I agree, that the Government did not waive or forfeit its argument. Contrary to Judge Hardiman's conclusion, the Government's argument is not new. The Government discussed the primary case upon which it relies, *Hodari D.*, in its opposition to Dupree's motion to suppress and in its amended opposition. Those briefs focused on the Government's then primary argument—that a seizure did not occur until the police arrested Dupree—however, the Government's earlier position does not preclude consideration of the argument it now makes as the Government relied on *Hodari D* quite broadly. A finding that the Government waived its argument is improper particularly when one reviews the Government's motion for reconsideration of suppression, in which the Government briefed suppression standards extensively and excerpted the passages from *Hodari D* that are at issue on appeal. Notably, Dupree did not raise any preservation or waiver argument in his opposition to reconsideration; rather, Dupree addressed the merits of the Government's position. Further, the District Court did not foreclose consideration of those passages or make any findings of waiver with respect to the *Hodari D.* argument when it ruled on the Government's reconsideration motion.

The Government made several arguments in the proceedings before the District Court and cited and excerpted numerous cases, including the portion of *Hodari D.* at issue on appeal. This case does not present a situation in which a judge was expected to anticipate an argument that was never raised. The Supreme Court's instruction in *Hodari D.* was adequately and prominently before the District Court such that the Government did not waive or fail to preserve its primary argument on appeal.

## B.     Suppression

The issue before this Court, as I understand it, is whether suppression is required when a suspect flees from an officer's momentary, unlawful physical seizure and the suspect discards evidence during flight that is later recovered. As I will set forth more clearly below, the Supreme Court's instruction in *Hodari D.* compels a reversal of the District Court's order suppressing the firearm.[1] Therefore, I will dissent from my colleagues.

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "Generally, for a

---

[1] Unlike Judge Fisher, I am not troubled by the Government's reliance on a passage from *Hodari D.* that is dicta. The Supreme Court grants certiorari in fewer than 85 cases annually, and thus, provides precedent on very few issues. Accordingly, the Court's dicta is highly persuasive and should be treated as binding unless there are indications to the contrary, which in this case, there are none. As I have set forth in my dissent, the Court spoke on the precise factual setting presented by this case and instructed that suppression would not be appropriate. Under these circumstances, I do not believe that adhering to the Supreme Court's instruction is optional.

seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). However, under the exception to the warrant requirement established in *Terry v. Ohio*, 392 U.S. 1 (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Any evidence obtained pursuant to an investigatory stop (also known as a 'Terry stop' or a 'stop and frisk') that does not meet this exception must be suppressed as 'fruit of the poisonous tree.'" *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *United States v. Coggins*, 986 F.2d 651, 653 (3d Cir. 1993)).

In *Hodari D.*, the Supreme Court explained that a seizure occurs within the meaning of the Fourth Amendment when there is either the "laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or "submission to the assertion of authority." *Hodari D.*, 499 U.S. at 626 (emphasis omitted). In elaborating on physical seizures, the Court clarified that:

To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. If, for example, [the law enforcement officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.

*Id.* at 625 (emphasis in original).

5

The Court further explained that with respect to the principles underlying the Court's Fourth Amendment precedent: We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words and beyond the meaning of arrest . . . . Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed. Since policemen do not command "Stop!" expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures.

*Id*. at 627 (emphasis in original).

In *Hodari D.*, police officers on patrol in a police vehicle in a high crime area turned down a street where several teenagers were huddled together. *Id*. at 623. The teenagers fled as soon as they noticed the officers' car. Hodari was one of those individuals and during flight he discarded what was later determined to be a moderate quantity of crack cocaine. *Id*. In addressing Hodari's argument for suppression, the Supreme Court concluded that Hodari fled prior to any submission of authority, and therefore, no seizure had occurred prior to his flight. Under these circumstances, the Fourth Amendment is not implicated, and any evidence discarded during flight is admissible. *Id*. at 629 ("In sum, assuming that Pertoso's pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure,

and his motion to exclude evidence of it was properly denied.").

Since *Hodari D.*, courts have routinely held that evidence abandoned during flight from an earlier encounter with the police that did not constitute a seizure is admissible. *See United States v. Smith*, 575 F.3d 308, 312-16 (3d Cir. 2009) (reversing suppression of a firearm obtained from an individual who discarded it during flight from law enforcement officers as the suspect fled before a seizure had occurred and therefore, had not triggered Fourth Amendment protections); *United States v. Martin*, 399 F.3d 750, 752-53 (6th Cir. 2005) (affirming denial of suppression under *Hodari D.* as the defendant "had not been seized when he discarded his revolver"); *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994) ("We hold that Hernandez was not seized because he never submitted to authority, nor was he physically subdued. Consequently, any evidence obtained during [the law enforcement officers'] encounter with Hernandez is admissible, including the discarded gun.").

Additionally, courts have addressed whether evidence discarded by a defendant during flight from an encounter with the police that constituted an unlawful show-of-authority seizure is admissible. Most courts have suppressed such evidence as fruit of the poisonous tree. *See, e.g.*, *Brown*, 448 F.3d at 252 (concluding that Brown was seized prior to his "aborted escape attempt" and evidence obtained after this seizure was inadmissible). However, at least one circuit has held otherwise. *See United States v. Garcia*, 516 F.2d 318, 319-20 (9th Cir. 1975) (holding that evidence discarded when a defendant fled from an unlawful show-of-authority seizure is admissible as the law enforcement officers did not exploit the unlawful stop and the defendant's flight was not tainted by the unlawful stop). The rationale for this holding is relevant to our analysis regarding the

7

instant appeal. In *Garcia*, the court distinguished between two scenarios, explaining that:

If there were evidence in the record that the checkpoint at San Clemente was designed to lure suspected criminals into flight from law enforcement officers, we might reach a different conclusion. Where a suspect's act is the intended result of illegal police conduct, or ensuing police action, it is likely to prove tainted. But where the illegal conduct of the police is only a necessary condition leading up to the suspect's act, no taint attaches to his conduct; a "but-for" connection alone is insufficient. In this case, the illegal stop was no more than part of a series of facts leading up to the subsequent flight. By ordering Martinez-Lopez to stop, the officer could hardly have intended him to flee.

*Id*. (internal citations omitted). Thus, contrary to Dupree's contention, evidence discarded by a fleeing defendant after an unlawful seizure does not make that evidence per se inadmissible. *Id*. (holding that the discarded evidence was not tainted by the earlier unlawful stop); *cf. United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("[W]e now hold that a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest.").

The parties did not provide any authority from this Court or any of our sister circuits that addresses the precise issue in this appeal; namely, whether suppression is required when evidence is discarded by a defendant during flight after a momentary physical seizure occurs that is later deemed to be an unlawful seizure. In contrast to the absence of authority from the circuits, the Supreme Court gave the answer in *Hodari D*. when it hypothesized that if the law enforcement officer "had

8

laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest." *Hodari D.*, 499 U.S. at 625. As the Court explained, there is no "continuing arrest" during a period of fugitivity. *Id.* It further elaborated that "[u]nlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed." *Id.* at 627.

To hold as Dupree suggests would create unacceptable incentives. It would encourage suspects to disobey orders from law enforcement officers, thereby placing the public at risk, while at the same time allowing suspects to retain Fourth Amendment protections. *Cf. Hernandez*, 27 F.3d at 1407 (expressing concern for any application of the exclusionary rule that would permit suspects to flee from law enforcement officers yet still qualify for the protections of the Fourth Amendment). Moreover, a decision to deny suppression under these circumstances is reinforced by the Supreme Court's recent pronouncements regarding the exclusionary rule:

[T]he exclusionary rule is not an individual right and applies only where it result[s] in appreciable deterrence. We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future.

*Herring v. United States*, 129 S. Ct. 695, 700 (2009) (internal citations and quotation marks omitted). The Supreme Court has suggested that deterrence would be minimal under these circumstances thereby negating any value to exclusion.

9

## III. CONCLUSION

Contrary to my colleagues, I have concluded that the Government did not waive its argument on appeal and that its argument should prevail. I would reverse the District Court's order suppressing the firearm.

FISHER, *Circuit Judge*, concurring in part and concurring in the judgment.

Judge Hardiman has persuasively explained why the government is foreclosed from pursuing most of its arguments on appeal, and I join his opinion in most respects. I write separately to clarify why I would not enforce the waiver doctrine against the government with respect to its reliance on *California v. Hodari D.*, 499 U.S. 621 (1991), but would nevertheless affirm the District Court's suppression order both because the government has failed to satisfy its burden of proof and because the government's reliance on *Hodari D.* is misplaced.

The basic facts of this case are straightforward enough. Officers Mabry and Shippen were on the lookout for a suspect in a shooting, spotted Dupree in the vicinity, and thought he matched the suspect's description. Officer Mabry approached Dupree and grabbed him. Dupree almost immediately broke free, gave chase, and moments later threw a gun into a flowerpot while still on the run. Although the government persisted in telling the District Court otherwise, it now wisely concedes that Officer Mabry's act of grabbing Dupree, no matter how short in duration, effected a seizure within the meaning of the Fourth Amendment. *See United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (seizure may occur with "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful" (quoting *Hodari D.*, 499 U.S. at 626)) (quotation marks omitted); *see also id.* ("seizure is effected by even 'the slightest application of physical force'" (quoting *Hodari D.*, 499 U.S. at 625-26)). And as the government likewise acknowledges, because that seizure was unsupported by reasonable suspicion, much less probable cause,

it was unlawful.  *See Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000); *see also*, *e.g.*, *Brown*, 448 F.3d at 246-52; *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000); *United States v. Baker*, 221 F.3d 438 (3d Cir. 2000).

It is axiomatic that evidence obtained as a result of a Fourth Amendment violation ordinarily must be suppressed as "fruit of the poisonous tree."  *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *see also United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010); *United States v. Mosley*, 454 F.3d 249, 254 (3d Cir. 2006).  That axiom is not absolute; although evidence obtained as a result of a Fourth Amendment violation may be subject to the exclusionary rule as a general matter, the Supreme Court has carved out several exceptions to that rule.  *See United States v. Pelullo*, 173 F.3d 131, 136 (3d Cir. 1999); *see also Mosley*, 454 F.3d at 269; *United States v. Goodrich*, 450 F.3d 552, 557 (3d Cir. 2006).  These exceptions reflect the Court's disavowal of a wooden test for determining whether there exists a causal connection between unlawful police conduct and the recovery of incriminating evidence.  *See*, *e.g.*, *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975); *Nardone v. United States*, 308 U.S. 338, 341 (1939).  Instead, the Court has taught that "the scope of the exclusionary rule is determined by 'whether, granting establishment of the primary illegality, the evidence to which objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"  *United States v. Burton*, 288 F.3d 91, 99 (3d Cir. 2002) (quoting *Wong Sun*, 371 U.S. at 488) (ellipsis omitted); *see also United States v. Perez*, 280 F.3d 318, 338 (3d Cir. 2002) ("[E]vidence is not to be excluded if the connection between the illegal police

conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint." (quoting *Segura v. United States*, 468 U.S. 796, 797 (1984)) (quotation marks omitted)); *Pelullo*, 173 F.3d at 136. To determine whether the taint of the initial illegality has been purged, the Supreme Court has instructed us to focus on three non-dispositive factors: (1) the temporal proximity between the unlawful conduct and the recovery of the evidence; (2) "the presence of intervening circumstances"; and (3) "the purpose and flagrancy" of the unlawfulness. *Brown*, 422 U.S. at 603-04; *see Burton*, 288 F.3d at 99-100; *see also*, *e.g.*, *United States v. Butts*, 704 F.2d 701, 704-05 (3d Cir. 1983). The government shoulders the burden of establishing that suppression is unwarranted in light of these factors. *See Taylor v. Alabama*, 457 U.S. 687, 690 (1982).

In its brief, the government advances a short disquisition on recent Supreme Court case law reenforcing the Court's practice of suppressing evidence as a "last resort, not [as a] first impulse[.]" *Herring v. United States*, 129 S. Ct. 695, 700 (2009) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). But absent from the government's brief is any serious attempt to explain why the factors listed above favor its position. Considering that the foundation of the District Court's suppression order was its determination that the recovery of the gun was a direct product of Dupree's encounter with the police, one would think the government would have sought to directly impugn that determination in order to win a reversal of that order. The government's pleadings in this Court reflect almost no effort to that end and fall well short of the mark, as the government has failed to tell us in even circumspect terms how

3

or why the causal connection between Dupree's concededly unlawful seizure and the recovery of the gun was severed.

Rather than place its arguments within any accepted Fourth Amendment rubric, the government pins its hopes almost entirely on a passage from the Supreme Court's decision in *California v. Hodari D.*, 499 U.S. 621. There, police officers on patrol in a high-crime neighborhood observed several young individuals on the curb flee when they saw the officers' car. The officers chased the individuals, one of whom, Hodari, tossed aside what turned out to be crack cocaine before being tackled and handcuffed. The question presented was "whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *Id.* at 623 (footnote omitted). The Court posited that although a defendant is "seized" through "the mere grasping or application of physical force[,]" *id.* at 624, there is not a "*continuing* arrest" if the defendant flees or escapes after the initial seizure, *id.* at 625. To illustrate, the Court explained hypothetically that if the officer "*had laid his hands upon Hodari to arrest him, but Hodari had broken away and had then cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest*." *Id.* (emphasis added and citation omitted). The Court framed the "narrow question" presented as "whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield." *Id.* at 626. The Court answered that question in the negative. *See id.* The Court reasoned that public policy supported its conclusion because "[s]treet pursuits always place the public at some risk, and compliance with police orders to stop should therefore be

4

encouraged." *Id.* at 627. "In sum," the Court wrote, "assuming that [the officer]'s pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure[.]" *Id.* at 629.

Judge Hardiman concludes that the government has forfeited its right to rely on *Hodari D.* by virtue of its concession on appeal that Dupree, unlike Hodari, was seized at the outset of his encounter with the police. That conclusion is not without some force. The government undoubtedly could have been more articulate, not to mention consistent, in these proceedings, and there is no doubt that the government's argument before the District Court does not mirror the one it presses on appeal. But legal arguments and pleadings need not be literary gems, and this case is not one in which the government is seeking to introduce into the record on appeal a factual circumstance it never developed in the District Court or is pursuing a legal theory it wholly failed to raise in the District Court. *Cf. United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1057-58 (3d Cir. 1993); *United States v. Frank*, 864 F.2d 992, 1006 (3d Cir. 1988). The overarching question throughout these proceedings has been whether the Fourth Amendment's protections reached Dupree at the pivotal moment at which he discarded the gun. In my view, the government adequately brought that question to the District Court's attention notwithstanding its erroneous assertion before that court that Dupree was never seized. And importantly, the District Court ruled on that very question, concluding that "Dupree was seized notwithstanding the fact

5

that he subsequently broke free of Officer Mabry's two-handed grip," and that "[t]he unlawful seizure of Dupree precipitated Dupree's flight, Officer Mabry's and Officer Shippen's pursuit . . ., and the forced abandonment by Dupree of the firearm . . . ." (App. 62-63.)  Under these circumstances, I am not convinced that we should enforce the waiver doctrine against the government to the extent it relies on *Hodari D.* to make its case. *See Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005) ("The crucial question regarding waiver is whether [the plaintiff] presented the argument with sufficient specificity to alert the district court[.]" (quotation marks, other alteration and citation omitted)).  I nevertheless agree with Judge Hardiman that affirmance is in order because, even if the government may invoke *Hodari D.* on appeal, that case does not carry the day for the government.

The passage in *Hodari D.* (italicized above) on which the government relies is dicta.  The government fleetingly – and unconvincingly – disputes that characterization, but dicta it surely is.  Dicta are "judicial comment[s] made while delivering a judicial opinion, but one[s] that [are] unnecessary to the decision in the case and therefore not precedential . . . ." Black's Law Dictionary 1177 (9th ed. 2009); *see also Connecticut v. Doehr*, 501 U.S. 1, 30 (1991) (Rehnquist, C.J., concurring) (dicta are discussions of "abstract and *hypothetical situations* not before [the court]" (emphasis added)).  The question in *Hodari D.* was whether the suppression of Hodari's drugs was proper where Hodari was never seized before abandoning them.  The absence of a seizure at any point was a key factual component driving the Court's analysis and underpinning its conclusion that the Fourth Amendment was not

6

implicated. The Court's speculation on how it might have ruled had Hodari been seized and then terminated the seizure on his own initiative – in other words, a factual circumstance other than the precise one presented – falls comfortably within the quintessential definition of dicta. *See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 92 (3d Cir. 2009) (defining dicta as "statements of law in the opinion which could not logically be a major premise of the selected facts of the decision" (quotation marks, alteration, and citation omitted)); *see also*, *e.g.*, *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 261 n.4 (3d Cir. 1998). As such, it does not bind this Court. *See N.J. Media Group v. Ashcroft*, 308 F.3d 198, 201 (3d Cir. 2002); *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 495 n.41 (3d Cir. 1992) (en banc).

To be sure, Supreme Court dicta, even while non-binding, are still highly persuasive. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003); *In re McDonald*, 205 F.3d 606, 612-13 (3d Cir. 2000). Nevertheless, this Court gives dicta as much weight as it sees fit under the circumstances of a particular case. *See*, *e.g.*, *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007). For two primary reasons, I do not believe that we should, or even can, elevate *Hodari D.*'s dicta into controlling authority in deciding this case, as the government in effect requests and as our dissenting colleague evidently believes we should do.

7

First, the government has cited precious few federal cases that accord with its understanding of *Hodari D.*[1] A shortage of cases from other courts embracing that understanding does not, of course, preclude us from charting new territory. That said, it seems to me that we should proceed with great caution before ascribing especial significance to dicta from a case that, despite approximately twenty years on the books, has almost never occasioned the result the government urges here, at least as far as both my research and the government's brief reflect. A cautious approach is all the more appropriate given what I perceive to be a manifest tension between the government's reading of *Hodari D.* and other strains of Fourth Amendment jurisprudence.

Second, and maybe even more important, the government's interpretation of *Hodari D.* runs practically headlong into this Court's precedents. In *United States v. Coggins*, 986 F.2d 651 (3d Cir. 1993), Coggins took a flight from St. Thomas to St. Croix, U.S. Virgin Islands. Unbeknownst to Coggins, a Drug Enforcement Administration agent also onboard recognized Coggins as a drug trafficker.

_____

[1]The cases the government spotlights do it little good. *United States v. Williams*, 608 F. Supp. 2d 325 (E.D.N.Y. 2008), may be the government's best hope, but it in no way binds our Court. And in any event, I find both its reasoning and its result unpersuasive as applied here. Passages from *United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997), arguably serve the government's cause in the abstract, but importantly, that case makes no mention of *Hodari D.* The same goes for *United States v. Dawdy*, 46 F.3d 1427 (8th Cir. 1995).

8

Later that night, as Coggins was waiting for a return flight to St. Thomas, the agent approached and began questioning Coggins and his traveling companions. When Coggins stood up and said he needed to go to the bathroom, the agent told him to sit back down. Coggins at first complied but soon thereafter ran away, throwing plastic bags from his pockets while the agent chased him. Coggins was arrested and the bags were discovered to contain crack cocaine. Coggins was convicted of a drug offense and appealed. The main issue before this Court was whether Coggins was unlawfully seized when the agent was questioning him. As we explained, "If Coggins was unlawfully seized, the district court should have suppressed the evidence of the crack cocaine that Coggins discarded while fleeing with [the agent] in hot pursuit." *Id.* at 653. We held that Coggins was seized by the agent within the meaning of the Fourth Amendment because he had submitted to the agent's show of authority by sitting down after having asked for permission to go to the bathroom. *Id.* We rejected the government's reliance on *Hodari D.* to show that Coggins was no longer seized after he had run away. *Id.* at 653-54. We distinguished *Hodari D.* on the ground that while Coggins initially yielded to the agent's authority, Hodari never did so at any time.[2] *Id.* at 654.

*Coggins* and this case are separated by several degrees in pure factual terms, but they are analytically indistinguishable as

---

[2]We did not vacate Coggins' conviction, however, because we found that reasonable suspicion supported the seizure. As noted, there is no dispute here that the officers' seizure of Dupree was not supported by reasonable suspicion and hence was unlawful.

9

far as *Hodari D.* is concerned.  In both cases, the defendants were seized, Dupree via the application of physical force and Coggins via his submission to the agent's show of authority.  In both cases, the defendants unilaterally terminated the seizure, Dupree by breaking free from Officer Mabry's grip and Coggins by no longer submitting to the agent's command.  And in *Coggins*, as here, the government argued that that unilateral act on the defendant's part removed the case from the Fourth Amendment's purview based on *Hodari D.*'s dicta. We rejected that argument in *Coggins*.  In my view, the same conclusion must obtain here.

Like our dissenting colleague, I certainly see the logical allure of the government's position.  A superficial study of the facts of this case might well lead one to question why a court would permit a criminal suspect to reap the exclusionary rule's benefits when he flees from law enforcement, even if he was seized unlawfully.  Add to the mix *Hodari D.*'s musings on whether such a suspect is in fact still seized for Fourth Amendment purposes while in flight, and the answer to that question seems plain:  the court should permit no such thing. The critical problem with that framework and the result it yields is that it both completely sidesteps the more sophisticated inquiry our Fourth Amendment jurisprudence mandates and effectively relieves the government of its burden on a suppression motion.

There may come a day when the Supreme Court extends the principle it articulated hypothetically in *Hodari D.* Significantly, that day has not yet come.  Until it does, I am convinced that the police officers in this case recovered the gun

in violation of Dupree's Fourth Amendment rights and, moreover, that the government has not shouldered its burden of proving why the gun should not be suppressed as a consequence of that violation. *See*, *e.g.*, *Mosley*, 454 F.3d at 269.

In sum, I would hold that the government loses this appeal both because it has not met its burden of demonstrating the constitutionality of the recovery of the gun and because its novel reliance on *Hodari D.*, while not foreclosed, is unavailing. Accordingly, while I concur in Judge Hardiman's opinion in most respects, I would also affirm the District Court's suppression order for the foregoing reasons.

11