RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

      *v.*

IRVING T. SEYMOUR,

                *Defendant-Appellant.*

No. 12-4313

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:10-cr-00399-1—Lesley Brooks Wells, District Judge.

Decided and Filed: January 15, 2014

Before: COLE and CLAY, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Jeffry F. Kelleher, JEFFRY F. KELLEHER & ASSOCIATES, CO., Cleveland, Ohio, for Appellant. Bernard A. Smith, UNITED STATES ATTORNEY'S OFFICE, Akron, Ohio, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. Defendant Irving Seymour was convicted by a jury of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 100 months' imprisonment. He appeals four decisions of the district court: (1) the district court's denial of his motions for discovery; (2) the court's denial of his motion to suppress; (3) the court's application of the four-point firearm enhancement of U.S.S.G. § 2K2.1(b)(6)(B); and (4) the court's decision to have

_____

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

Defendant's sentence run consecutive to an already-imposed state sentence. For the reasons set forth below, we **AFFIRM** the district court's rulings on Defendant's motions for discovery and to suppress, **REVERSE** the district court's application of the firearm enhancement, **VACATE** Defendant's sentence, and **REMAND** for resentencing.

## BACKGROUND

### A.     Arrest and Conviction

On the afternoon of August 19, 2010, Detective James Welsh of the Elyria, Ohio Police Department was meeting in his office with Jourdan Powell, a confidential informant. Powell, who happens to be Defendant's cousin, had made undercover drug buys for Welsh on several occasions, but Powell's sources were drying up. Welsh asked Powell if he knew of any other illegal activity afoot in Elyria, including anyone illegally trying to sell handguns. Welsh's request paid immediate dividends. Just a few minutes after Powell left Welsh's office, he called Welsh to report that Defendant was trying to sell a .25 caliber handgun. Powell told Welsh where he and Defendant were, and Welsh set off to the location with two other officers—Detective Michael Fairbanks and Detective Gerald Lantz.

The detectives caught up with Defendant and Powell a few minutes later at a nearby gas station and convenience store. The detectives observed Powell pumping gas into a white Impala while Defendant sat in the front passenger seat. When Powell drove the Impala out of the gas station, the detectives followed in a marked police car. Powell immediately made two left turns without signaling—a violation of Ohio Rev. Code § 4511.39. The detectives flipped on their sirens and attempted to pull over the Impala.

At first, Powell resisted stopping the car and hit the brakes erratically. The detectives could see and hear Defendant telling Powell to keep driving. Powell eventually pulled over the car, but before the Impala came to a complete stop, Defendant jumped out of the car and tried to escape on foot. He stumbled as he leaped out of the car, got up, and starting running with all three detectives giving chase. Welsh was right behind Defendant and saw Defendant digging into his waist band. This motion indicated

to Welsh that Defendant was reaching for a weapon.  A few seconds later, Welsh watched Defendant reach to his waistband again and actually saw the handle of a handgun in Defendant's hand.  At that moment, Detective Fairbanks appeared from Welsh's right and tackled Defendant, sending a handgun flying from his hand.  The weapon turned out to be a .25 caliber handgun, with three rounds loaded in the magazine. The detectives searched Defendant and found 2.4 grams of crack cocaine and five hydrocodone pills.

Defendant was arrested for numerous violations of Ohio law.  Later, he was transferred to federal custody and indicted for one count of being a felon in possession of a firearm.  Defendant filed several motions before trial—seeking discovery of Powell's whereabouts and impeachment material about Powell, and seeking to suppress the evidence seized incident to his arrest.  After holding a suppression hearing, the district court denied all of these motions.  A jury convicted Defendant of the single count against him following a two-day trial.

## B.     Sentencing

Defendant's sentencing proceeding centered on two disputes:  whether the four-point firearm enhancement of U.S.S.G. § 2K2.1(b)(6)(B) should apply, and whether Defendant's sentence should be affected by a prior state sentence that had been ordered to run consecutive to Defendant's federal sentence.  The probation office recommended that the firearm enhancement apply on the basis that Defendant "possessed any firearm or ammunition in connection with another felony."   U.S.S.G. § 2K2.1(b)(6)(B). Defendant objected and the parties argued this issue at the sentencing hearing.  The government asserted that Defendant had possessed the .25 caliber handgun to facilitate the offense of felony drug possession under Ohio law.  *See* Ohio Rev. Code § 2925.11(C)(4). The government even suggested that Defendant might have intended to sell his crack and hydrocodone pills.  But the government walked back this statement shortly after making it, conceding that nothing in the record supported the supposition that Defendant was trying to sell drugs.  Defendant countered that his possession of a small amount of narcotics was not related to his possession of a handgun—in fact, the

government's evidence showed that he was trying to sell the gun. The district court imposed the firearm enhancement, but did not explain its reasoning.

The consecutive sentence issue stemmed from an Ohio state conviction for drug possession several months before Defendant's arrest in this case. The state court sentenced Defendant to 11 months' imprisonment, and further ordered that its sentence run consecutively to Defendant's federal sentence in this case. However, at the time the state court sentenced Defendant, his federal sentence had not yet been imposed. Defendant asserted to the district court that the state court's consecutive sentence violated Ohio law and asked for a downward variance to account for this error. The district court did not contest Defendant's characterization of Ohio law, but told him that state court was the proper forum for his argument.

The four-point firearm enhancement increased Defendant's total offense level to 24. Combined with Defendant's Criminal History Category of VI, this resulted in a Guidelines sentence range of 100–125 months. The district court carefully considered Defendant's extensive criminal history and sentenced him to 100 months' imprisonment, to run consecutive to his already-imposed state sentence.

## DISCUSSION

Defendant contests four of the district court's rulings: the district court's denial of Defendant's motions for discovery; its denial of his motion to dismiss; the application of the four-point firearm enhancement; and the court's failure to consider the already-imposed state sentence. We address each in turn.

### A.     Defendant's Motions for Discovery

Defendant first argues that the district court should have granted his two motions for discovery, which sought information to impeach Powell, as well as information concerning his whereabouts. We review the district court's denial of these motions abuse of discretion, *see United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993), and affirm.

Defendant's motions suffer from a fatal flaw—Powell did not testify at the suppression hearing or at trial. Defendant cites no law to support the proposition that he was entitled to impeachment material for a witness not called by either party. Although Defendant relies on *Roviaro v. United States*, 353 U.S. 53 (1957), that case does not help his argument. In *Roviaro*, the Supreme Court held that, under certain circumstances, the government can be required to reveal the identity of a confidential informant, even though the government generally has the authority to withhold this information. *See id.* at 60–61. Defendant, however, knew Powell's identity and his status as a confidential informant prior to the suppression hearing. Nor has Defendant carried his burden in establishing that the government withheld material information favorable to his defense in violation of its *Brady* and *Giglio* obligations. *See United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). Defendant speculates that Powell's two unsignaled turns were a ruse schemed up by Detective Welsh to manufacture probable cause. But this speculation is just that—speculation. Defendant also cites nothing to support his request for information concerning Powell's whereabouts. In sum, the district court did not abuse its discretion in denying Defendant's motions for discovery.

### B.    Defendant's Motion to Suppress

Defendant next contends that the district court should have suppressed the evidence seized after his arrest—namely, the handgun, crack cocaine, and hydrocodone pills. "When reviewing a district court's decision on a motion to suppress, we review its findings of fact for clear error and its legal conclusions de novo." *United States v. Lyons*, 687 F.3d 754, 762 (6th Cir. 2012). "A factual finding is clearly erroneous when a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (quotation marks omitted). And when "a district court denies a motion to suppress, we consider the evidence in the light most favorable to the government." *United States v. Moon*, 513 F.3d 527, 536–37 (6th Cir. 2008) (quotation marks omitted).

Although the search of Defendant was conducted without a warrant, Defendant's Fourth Amendment rights were not violated provided that the arrest was supported by probable cause. *See, e.g.*, *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008). To determine whether this exception applies here, we must determine when Defendant was constitutionally seized, and then ask if probable cause supported that seizure. Defendant asks us to conclude that he was seized when the Impala was pulled over. A traffic stop effects a seizure of the passengers in the car, *see United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012), but Defendant did not stop when the car did. The district court found, based on the credibility of the detectives who testified at the suppression hearing, that Defendant leaped out of the Impala and started running before the car had come to a complete stop.[1] This finding was not clear error. *See United States v. Dillard*, 438 F.3d 675, 681 (6th Cir. 2006). Because Defendant ran before the Impala came to a complete stop, he did not submit to the show of police authority at that time. *See California v. Hodari D.*, 499 U.S. 621, 624–26 (1991). He therefore was not seized until he was tackled by Detective Fairbanks. *See id.* at 629.

At the moment Defendant was tackled, the detectives had probable cause to arrest him for at least the Ohio crime of carrying a concealed handgun. *See* Ohio Rev. Code § 2923.12(A)(2). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (quotation marks omitted). The facts available to the detectives comfortably satisfy this standard. As Defendant tried to evade police, two detectives saw him reaching for his waistband. Welsh even saw Defendant holding a gun handle. These facts allowed the detectives to reach the reasonable conclusion that Defendant possessed a gun and that the gun was concealed. *See United States v. Thomas*, 11 F.3d 620, 628 (6th Cir. 1993); *McFinley v. Bethesda Oak Hosp.*, 607 N.E.2d 936, 939–40 (Ohio Ct. App. 1992) (per curiam).

---

[1]Defendant's alternate version of events, in which he calmly stepped out of the stopped car and was senselessly tackled, finds no support in the record.

Defendant's argument for suppression hypothesized that Powell made the unsignaled turns that triggered the traffic stop as part of a scheme plotted by Detective Welsh. Even if this were so—and there is nothing in the record to support Defendant's assertion—it would not affect the legality of the seizure. In *United States v. Martin*, 399 F.3d 750 (6th Cir. 2005), we considered a case where police officers had unlawfully attempted to stop the defendant, but the defendant ran rather than submit to the show of authority. *See id.* at 752. During his flight, the defendant abandoned a handgun. *See id.* We held that since the defendant had not submitted to the show of authority, he did not abandon his gun during a seizure—our analysis was not affected by the unlawfulness of the original attempt to seize the defendant. *See id.* at 752–53. Following *Martin*, even if the detectives' attempt to pull over the Impala had been unlawful, it would not change the Fourth Amendment analysis. Defendant was not seized until he was tackled, and he was not tackled until the detectives had probable cause to arrest him. Because the handgun and narcotics were seized incident to a lawful arrest, the district court did not err in denying Defendant's motion to suppress.

### C.          The Firearm Enhancement

The chief issue in Defendant's appeal concerns the district court's application of the four-point enhancement for possessing a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). We review a district court's sentence for procedural and substantive reasonableness, applying the abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Our review of procedural reasonableness includes determining whether the district court properly calculated a defendant's Guidelines range. *See id.* In the specific context of the § 2K2.1(b)(6)(B) firearm enhancement, "we review the district court's factual findings for clear error and accord 'due deference' to the district court's determination that the firearm was used or possessed 'in connection with' the other felony, thus warranting the application of the . . . enhancement." *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011). Applying this deferential standard of review, we agree with Defendant that the record does not support applying the enhancement.

The § 2K2.1(b)(6)(B) enhancement applies to defendants who "[u]sed or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The application notes to § 2K2.1 specify that the four-point firearm enhancement should apply "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 application note 14(A). The enhancement is not warranted if possession of the firearm "is merely coincidental to the underlying felony offense." *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009) (quotation marks omitted). The government bears the burden of establishing the factors supporting this enhancement by a preponderance of the evidence. *See United States v. Shields*, 664 F.3d 1040, 1043 (6th Cir. 2011).

The other felony offense in this case was possession of narcotics—2.4 grams of crack and five hydrocodone pills. As a general matter, "[t]here is no presumption in § 2K2.1(b)(5) [now § 2K2.1(b)(6)(B)] that the defendant's possession was 'in connection with' the other felony offense."[2] *United States v. Hardin*, 248 F.3d 489, 497 (6th Cir. 2001). However, the government argues that Defendant's handgun facilitated his narcotics possession principally on the basis of the "fortress theory," which does presume that, under certain circumstances, guns in close proximity to drugs warrant the § 2K2.1(b)(6)(B) enhancement. The fortress theory originally developed in the context of prosecutions for using or carrying a firearm in relation to a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A). In *United States v. Henry*, 878 F.2d 937 (6th Cir. 1989), we concluded that "if it reasonably appears that the firearms found on [a] premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect [] drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime."[3] *Id.* at 944. From there, we applied the fortress theory to the § 2K2.1(b)(6)(B) firearm enhancement, which

---

[2]Section 2K2.1(b)(5) was renumbered as § 2K2.1(b)(6) in 2006.

[3]The Supreme Court effectively overruled *Henry* in *Bailey v. United States*, 516 U.S. 137 (1995), where it held that "using" a gun meant more than simply possessing the gun in proximity to drugs. *See id.* at 143–44. Congress responded by amending § 924(c)(1) to also proscribe possessing a firearm "in furtherance of" a drug trafficking crime. Pub. L. No. 105-386, § 1(a), 112 Stat. 3469, 3469 (1998) (codified at 18 U.S.C. § 924(c)(1)(A)).

contains similar language to § 924(c)(1)(A). *See United States v. Covert*, 117 F.3d 940, 947–49 (6th Cir. 1997). A narrow version of the fortress theory can now be found in the application notes to § 2K2.1. Following that note, the firearm enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia. In these cases, application of subsection[] (b)(6)(B) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . ." U.S.S.G. § 2K2.1 application note 14(B).

We have repeatedly relied on the fortress theory to uphold applications of the firearm enhancement where the defendant was engaged in drug trafficking or simply in a house associated with drug trafficking. *See Taylor*, 648 F.3d at 432–33; *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006); *Hardin*, 248 F.3d at 500. We have also applied the fortress theory in cases where defendants may not have been trafficking narcotics, but were protecting "a large and valuable stash of drugs." *United States v. Ennenga*, 263 F.3d 499, 504 (6th Cir. 2001); *see also Angel*, 576 F.3d at 322–23. Even possessing a large amount of cash in close proximity to narcotics can support the firearm enhancement. *See United States v. Clay*, 346 F.3d 173, 179 (6th Cir. 2003).

However, we have resorted to the fortress theory more sparingly in cases that involve simple possession of smaller amounts of drugs. For example, in *United States v. Shields*, 664 F.3d 1040 (6th Cir. 2011), we reversed an application of the firearm enhancement where the defendant possessed only a small amount of marijuana and a baggy with cocaine residue. *See id.* at 1044. The government in *Shields* had not produced "relevant evidence, other than mere proximity, that the gun was actually used or intended to be used to protect the drugs." *Id.* at 1046. Our reluctance to apply the fortress theory in cases of simple possession stems in part from the Guidelines themselves. The application note that enshrined the fortress theory in the Guidelines singles out drug trafficking crimes for special treatment. "This implies that 'while close proximity between a firearm and drugs will suffice to justify the enhancement when an offender is engaged in drug trafficking, in other cases the enhancement applies only if

the government can establish that the firearm actually or potentially *facilitated* that offense.'" *Id.* at 1045 (quoting *United States v. McKenzie*, 410 F. App'x 943, 945 (6th Cir. 2011)).

Examining the record before us, and giving due deference to the conclusion of the district court, we hold that the government cannot sustain its burden and prove that the firearm enhancement applies to Defendant. We rest our conclusion on two facts. First, Defendant had only a small amount of drugs in his possession, and the government admits that nothing in the record shows that Defendant was engaged in any sort of narcotics trafficking.**[4]** As we explained, this Court has been less willing to rely on the fortress theory when the quantity of drugs is this small. Second, the testimony of Detective Welsh established that Defendant was attempting to *sell* his handgun. Defendant can hardly have been emboldened in his drug possession, or have hoped to protect his modest stash, while simultaneously attempting to rid himself of the weapon that could accomplish these goals. Under these circumstances, we cannot defer to the district court's determination that Defendant possessed a firearm in connection with another felony offense. We therefore reverse the application of the four-point enhancement of § 2K2.1(b)(6)(B), and hold that Defendant's sentence was procedurally unreasonable.

### D.     Consecutive Sentence

Finally, Defendant argues that the district court acted unreasonably when it ordered his federal sentence to run consecutively to an already-imposed state sentence. We review the court's decision to impose a consecutive sentence for abuse of discretion. *See United States v. McFalls*, 675 F.3d 599, 606 (6th Cir. 2012).

When he was sentenced in this case, Defendant was already serving a sentence imposed by an Ohio court that the state judge had ordered to run consecutively to his federal sentence. Defendant asserts that the state judge's order violated Ohio law. *See*

---

**[4]**At the time Defendant was arrested, possessing between one and five grams of crack cocaine was a fourth-degree felony. Today, possessing less than five grams of crack cocaine is a fifth-degree felony. *See* 2011 Ohio Laws File 29 (codified in relevant part at Ohio Rev. Code § 2925.11(C)(4)(a)–(b)).

*State v. Feller*, 985 N.E.2d 210, 217–18 (Ohio Ct. App. 2012) (citing *State v. White*, 481 N.E.2d 596, 598 (Ohio 1985)). However, Defendant cites no authority suggesting that a federal court must consider such an error made by a state court in an unrelated proceeding. Nor does he support his argument that the district court abused its discretion when it required Defendant's federal sentence to run consecutively to the state sentence. In any event, we need not rule on this issue prior to resentencing. Because we vacate Defendant's sentence, whether or not his federal sentence should run consecutively to his state sentence remains a decision to be made in the sound discretion of the district court.

### CONCLUSION

The district court committed no error when it rejected Defendant's motions for discovery and his motion to suppress. But the record does not support applying the four-point firearm enhancement to Defendant's advisory Guidelines sentencing range. We therefore **AFFIRM** the district court's rulings on Defendant's motions for discovery and to suppress, **REVERSE** the district court's application of the firearm enhancement, **VACATE** Defendant's sentence, and **REMAND** for resentencing consistent with this opinion.