NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0751n.06

No. 13-5600

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 30, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,    )
                             )
    Plaintiff-Appellee,       )
                             )
v.                           )    ON APPEAL FROM THE UNITED
                             )    STATES DISTRICT COURT FOR THE
RAYMONE KELLEY,              )    EASTERN DISTRICT OF KENTUCKY
                             )
    Defendant-Appellant.      )
                             )

Before: DAUGHTREY and KETHLEDGE, Circuit Judges; ECONOMUS, District Judge.[*]

PER CURIAM. Defendant Raymone Kelley pleaded guilty to being a felon in possession of a firearm, based on a plea agreement with the government, and was sentenced to 92 months' incarceration, to be served consecutively to an undischarged state court sentence. He now appeals his sentence, contending: (1) that the district court erred in increasing his offense level under USSG § 2K2.1(b)(6)(B) by four levels for possession of the firearm "in connection with another felony" and (2) that the district court abused its discretion in ordering consecutive sentencing. We find no reversible error and affirm.

The charge in this case grew out of a report to Covington police of gunshots fired at a city housing project. The police dispatcher told the responding officers that the shots came from a

_____

[*]The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

particular residential building in the development. When the officers arrived, they discovered discharged shotgun shells on the outside of the identified residential unit—both in front and in back—and, looking through a window, observed a loaded round on the kitchen counter. The police made contact with the individuals inside, Kelley and two others, but were denied entrance. They then called in the SWAT team and obtained and executed a search warrant for the residence. The search produced a Springfield 944 series shotgun with a sawed-off barrel and numerous rounds of ammunition, both spent and unspent, in the house and on Kelley's person. The two other individuals in the residence gave written statements naming Kelley as the shooter.

Kelley was arrested and charged by the state with felony wanton endangerment and being a convicted felon in possession of a firearm. He was later charged in federal court in this case with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). In light of the federal indictment, the Kentucky state charges were dropped. However, Kelley's parole status in connection with an earlier state conviction in Ohio for felony robbery was revoked, and he was ordered to serve the remainder of an eight-year sentence.

In federal court, Kelley pleaded guilty to being a felon in possession of a firearm and the government dismissed the second charge as part of the plea agreement with Kelley. In the presentence report, the Probation Department determined that Kelley's range under the Sentencing Guidelines was 92-115 months of incarceration. This calculation was based on a base offense level of 22, a criminal history category of VI, a three-level reduction for acceptance of responsibility under USSG § 3E1.1, and a four-level enhancement pursuant to USSG § 2K2.1(b)(6)(B), which applies when a defendant "used or possessed any firearm or

ammunition in connection with another felony offense." In this case, the other felony offense was the dismissed Kentucky state charge of felony wanton endangerment.

Kelley lodged two objections to the presentence report. The first was to the recommendation of the four-level enhancement, on the ground that the evidence in the case supported a charge of misdemeanor wanton endangerment only. The second was to the recommendation that his sentence should be served consecutively to his undischarged Ohio sentence, on the ground that the result would be "double punishment."

In response to the first claim, the government introduced testimony from the arresting officer, who said that the area where Kelley fired the gunshots was a densely populated housing project with multiple residential units in close proximity to each other; that witnesses reported that Kelley was involved in an argument before he fired the gun and that he appeared to be "drinking and going crazy"; and that he had apparently fired the weapon in at least two different locations, based on the location of the shotgun shells found by police. The officer testified that he charged Kelley with felony wanton endangerment because there were a number of people present at the time Kelley fired the shotgun, including "several groups of kids . . . within distance [of the shots]" and because Kelley "could have caused harm or serious physical injury to anyone in the area." Indeed, one witness told the officer that Kelley "got the shotgun[,] . . . then came out of the house [and] put the gun up in one of them rooms," which could be taken to mean that he shot into one of the housing units. The district court reviewed the Kentucky statutory definitions of wanton endangerment and found that a preponderance of the evidence supported a felony charge and, therefore, a four-level enhancement under § 2K2.1(b)(6)(B).

"In the specific context of the § 2K2.1(b)(6)(B) firearm enhancement, we review the district court's factual findings for clear error and accord due deference to the district court's

determination that the firearm was used or possessed in connection with the other felony, thus warranting the application of the . . . enhancement." *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (citation and internal quotation marks omitted).

"The application notes [to § 2K2.1] indicate that the enhancement should apply 'if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense.'" *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011) (quoting USSG § 2K2.1, comment. (n.14(A)). "'Another felony offense', for purposes of subsection (b)(6)(B), means any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1(b)(6), comment. (n.14(C)). It is the government's burden to establish the supporting factors by a preponderance of the evidence. *Seymour*, 739 F.3d at 929.

Under Kentucky law, a defendant is guilty of first-degree (felony) wanton endangerment "when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." Ky. Rev. Stat. § 508.060. A defendant is guilty of second-degree (misdemeanor) wanton endangerment "when he wantonly engages in conduct which creates a substantial danger of physical injury to another person." Ky. Rev. Stat. § 508.070. The Supreme Court of Kentucky recently discussed the differences between the offenses:

> The differences between first- and second-degree wanton endangerment are the mental state and degree of danger created. As to the mental state, both crimes require wanton behavior, but first-degree also requires "circumstances manifesting extreme indifference to the value of human life," which has been described as "aggravated wantoness [sic]." *E.g., Ramsey v. Commonwealth,* 157 S.W.3d 194, 197 (Ky. 2005). As to the danger created, first-degree requires a substantial danger of death or serious physical injury, whereas second-degree

requires only a substantial danger of physical injury. The distinction between the two degrees of the crime was described in the commentary in part as follows:

> Creation of the two offenses is necessitated by the wide differences in dangerousness that exist with the various types of wanton conduct. For example, aimlessly firing a gun in public is not as wanton in degree as firing a gun into an occupied automobile and should not carry the same criminal sanction.

KRS 508.060 Kentucky Crime Commission/LRC Commentary (1974). In the examples given, aimlessly firing a gun in public would be the second-degree crime and firing a gun into an occupied car would be the first-degree crime. Or, as described by Professors Lawson and Fortune, "Firing a weapon in the immediate vicinity of others is the prototype of first degree wanton endangerment. This would include the firing of weapons into occupied vehicles or buildings." Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 9-4(b)(2), at 388 n. 142 (1998) (citations omitted).

*Swan v. Commonwealth*, 384 S.W.3d 77, 102–03 (Ky. 2012).

Kelley argues that there is no evidence to support a charge of first-degree felony wanton endangerment. He maintains that he merely shot a gun into the air and that such conduct meets neither the heightened mental state nor the level of danger required for a first-degree charge. Kelley also contrasts his actions with examples from case law that show the type of conduct that warrants a felony charge. The district court determined otherwise. After hearing testimony from the arresting police officer, reviewing the other evidence in the record, and examining both statutes, the district court found that Kelley fired a gun multiple times "in the immediate vicinity" of other individuals in a densely populated area while intoxicated and engaged in an argument and concluded that Kelley's conduct satisfied the statutory elements for a felony charge. Thus, the district court properly applied USSG § 2K2.1(b)(6)(B).

The district court also reviewed USSG § 5G1.3(c), which gives the court discretion to order that a sentence run concurrently with, partially concurrently with, or consecutively to any prior undischarged term of imprisonment. Citing several relevant factors in support of its

determination, the district court ordered that the federal sentence here be served consecutively to Kelley's Ohio sentence. In this court, the government contends that Kelley waived his right to appeal this issue in his plea agreement, in which he expressly waived "the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, as long as the sentence is within the Guideline range as finally determined by the Court." We disagree.

The interpretation of Kelley's appellate-rights waiver is controlled by this court's decision in *United States v. Bowman*, 634 F.3d 357 (6th Cir. 2011). *Bowman* stands for the principle that when a plea agreement's waiver clause *allows* appeal on some grounds, *disallows* appeal on other grounds, and is *silent* regarding the appealability of a consecutive sentencing decision, that silence is construed against the government and the defendant may appeal the decision to impose a consecutive sentence. *See id.* at 361. As we observed in *Bowman*, if "[n]o reference is made to either the state sentence or to [consecutive sentencing] in the plea agreement . . . [the defendant] has a strong argument that the plea agreement is ambiguous on this issue." *Id.* Because it is well settled that any such ambiguity is to be construed against the government, we concluded that such a waiver does not prevent a reviewing court from reaching the merits of the defendant's appeal. *Id.* at 360–61 (citing *United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006), and *United States v. Fitch*, 282 F.3d 364, 367–68 (6th Cir. 2002)).

For at least the three years since *Bowman*, the government has been on notice that general appeal-waiver language will not be construed to preclude the appeal of a consecutive sentence. The government has not "take[n] steps in drafting a plea agreement to avoid [this] imprecision," despite *Bowman*'s explicit invitation to do so. *Id.* As a result, there is no principled reason to avoid applying *Bowman* here and thereby reach the merits of Kelley's consecutive-sentencing

claim, which we review for abuse of discretion. *United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009).

Consecutive sentencing is governed by USSG § 5G1.3(c), which provides that if a defendant was on supervised release at the time of the offense and has had that status revoked, "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Nevertheless, in its Application Note to subsection (c), "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." USSG § 5G1.3, comment. (n.3(C)). In this case, the district court recognized that it had discretion in the matter and carefully considered the relevant individual factors under 18 U.S.C. § 3553(a), particularly the fact that Kelley had a substantial criminal record for someone his age and that he previously had been convicted of being a felon in possession of a firearm. The decision to impose consecutive sentencing was, therefore, not an abuse of the district court's discretion.

For the reasons set out above, we AFFIRM the judgment of the district court.