NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0337n.06

**No. 14-1533**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 06, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| DAVID LEWIS ANDERSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant David Lewis Anderson appeals his within-Guidelines sentence of 108 months of imprisonment imposed by the district court following his plea of guilty to one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). Anderson challenges the procedural reasonableness of the sentence: specifically, the district court's application of a base offense level enhancement, pursuant to U.S.S.G. §§ 2K2.1(c)(1)(A) and 2A4.1, for possession or use of a firearm in connection with the commission of another offense. For the reasons that follow, we affirm.

I.

The question whether U.S.S.G. § 2A4.1 applies to Anderson's case stems from events that took place on the morning of July 22, 2013, in Detroit. Tawana Wilson, defendant's girlfriend (now his wife), was at a sister's home when Anderson arrived in Wilson's vehicle, which he had taken and refused to return. Anderson, whom witnesses believed had been drinking, approached the home and asked if Wilson was there. Wilson refused to meet with Anderson, who then picked up a brick and broke out the windows in her SUV and drove off.

Anderson went to Wilson's house on Cadieux Street in Detroit and proceeded on a rampage, damaging the house by ramming the garage door, breaking a door window, and destroying several items inside. He then walked away. Shortly thereafter, Wilson's friend, Tamara Hollis, who was in the vicinity, notified Wilson that her dog was running loose. While waiting for someone to retrieve the dog, Hollis and her sixteen-year-old daughter observed Anderson approaching their vehicle from a side street. The daughter stated that "[h]e's got something in his hand." Hollis observed a small black handgun in Anderson's right hand. The gun had fallen out of Anderson's pocket; he picked it up and placed it back in his pocket. According to Hollis, Anderson seemed "clumsy" and "scared," so she approached him in an apparent attempt to calm him down. In response, Anderson told her, "I'm not going to do anything to you. I just need you to take me to the old neighborhood," and "I swear I'm not going to do anything to you." Anderson and her daughter were about to run, but Anderson got into Hollis's vehicle and sat in the front passenger seat. Out of fear, Hollis and her daughter also entered the car and began to drive. Anderson gave Hollis directions to his intended destination. As Hollis drove away, the firearm fell out of Anderson's pocket and landed on the floor under

the passenger seat. Hollis told Anderson to leave the gun where it was because her daughter was in the back seat of the car; Anderson complied.

A third-party onlooker witnessed the entire event. Wilson's sister, Mykal Wilson, drove to the house on Cadieux Street to assist in securing Wilson's dog. She watched as Anderson approached Hollis and her daughter, saw Anderson's gun, and decided to get in her car and follow them as they drove away. Mykal called the Detroit Police Department and informed them that Anderson was holding a woman and child hostage. When Mykal came upon a U.S. Border Patrol vehicle, she flagged it down and reported to the agents that she had just seen Hollis and her daughter being abducted by Anderson, who was armed with a handgun. The Border Patrol agents pulled over Hollis's car and asked to speak with her outside of the vehicle. Hollis told the agents that she and her daughter were being held against their will and that Anderson had used a small black handgun to abduct them. Hollis stated she was in fear for her life.[1] Hollis's daughter later expressed her similar fear to the officers.

The agents ordered Anderson to get out of the car. They found a black Raven .25 caliber pistol with an obliterated serial number on the passenger-seat floorboard, in the immediate area where Anderson sat in the car. The authorities placed Anderson under arrest on suspicion of carrying a concealed weapon and kidnapping of a minor and adult.

A federal grand jury indicted Anderson on one count of being a felon in possession of a firearm in violation of U.S.C. § 922(g), and possession of a firearm with an obliterated serial

---

[1]In a subsequent interview attempted by investigators, Hollis adamantly stated that she and her daughter wanted to move forward and she no longer wanted any involvement pertaining to Anderson's prosecution. Hollis denied that she was forced, threatened, or kidnapped by Anderson during the incident.

number, in violation of U.S.C. § 922(k). Anderson pled guilty without a Rule 11 plea agreement to both charges in the indictment.

The applicable Guidelines section to determine the proper offense level for violations of 18 U.S.C. §§ 922(g) and 922(k) are found in U.S.S.G. § 2K2.1. Under § 2K2.1(c)(1)(A), "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense . . . apply . . . § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." Section 2X1.1(a), in turn, indicates that a defendant's base offense level should be calculated by using the Guideline for the substantive offense, plus any adjustments from such Guidelines for any intended offense conduct that can be established with reasonable certainty. Because Anderson ostensibly used the firearm in connection with the substantive offense of "kidnapping, abduction, unlawful restraint," the presentence investigation report ("PSR") recommended that the Guidelines for kidnapping found in U.S.S.G. § 2A4.1 be used to calculate Anderson's base offense level. Section 2A4.1 provides for a base offense level of thirty-two. Decreasing Anderson's offense level by three points for acceptance of responsibility, the PSR calculated the total offense level as twenty-nine. Combined with a criminal history category of III, the advisory Guideline range was 108 months to 135 months of imprisonment. Defense counsel challenged the base offense level enhancement both in a written sentencing memorandum and verbally during the sentencing hearing.

At sentencing, the district court found that the government proved by a preponderance of the evidence that Anderson used his firearm in connection with the substantive offense of

unlawful restraint under Michigan law (but not kidnapping, as the government also argued),[2] and therefore applied the enhanced base offense level set forth in § 2A4.1. The court determined that Anderson's advisory Guideline range was 108 to 135 months and sentenced him to 108 months of imprisonment on Count 1 and 15 months on Count 2, to be served concurrently.

Anderson now appeals, arguing that the district court abused its discretion in applying the § 2A4.1 enhancement because the government failed to show by a preponderance of the evidence that his actions violated Michigan's unlawful restraint statute. Thus, Anderson asserts that his sentence is procedurally unreasonable. He contends that without the increased penalties of § 2A4.1, his base offense level would have started at twenty-four and been adjusted ultimately to twenty-five after accounting for other relevant sentencing factors, yielding a much lower Guideline range of seventy to eighty-seven months of imprisonment. Anderson argues that this court should vacate his sentence and remand to the district court for resentencing, without application of the § 2A4.1 enhancement.

## II.

We review criminal sentences under a deferential abuse-of-discretion standard for reasonableness, which consists of both a procedural and substantive component. *Gall v. United States,* 552 U.S. 38, 51 (2007). Procedural reasonableness requires the district court to have "properly calculated the applicable advisory Guidelines range." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). Anderson argues that the district court improperly calculated the Guideline range when it applied the cross-reference Guideline under § 2K2.1 because there was insufficient evidence that Anderson unlawfully restrained Hollis and her daughter. We review the district court's factual findings for clear error and its legal conclusions de novo. *Id.* at 579.

---

[2]The government does not appeal this ruling.

The government bears the burden of establishing facts that would support an enhancement under the Guidelines and must do so by a preponderance of the evidence. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014).

Before 2006, unlawful restraint was incorporated into Michigan's kidnapping statute, Mich. Comp. Laws ("MCL") § 750.349, which encompassed six forms of conduct constituting the crime of kidnapping. *People v. Phillips*, No. 311110, 2013 WL 6670847, at *3 (Mich. Ct. App. Dec. 17, 2013) (citing *People v. Jaffray*, 445 Mich. 287, 296–97, 519 N.W.2d 108 (1994)). But in 2006, the Michigan legislature amended the kidnapping statute and split it into two parts, with the first part addressing "kidnapping" (MCL § 750.349) and the second "unlawful imprisonment" (MCL § 750.349b). MCL § 750.349b provides in pertinent part:

> (1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:
>
> (a) The person is restrained by means of a weapon or dangerous instrument.
>
> (b) The restrained person was secretly confined.
>
> (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.
>
> * * *
>
> (3) As used in this section:
>
> (a) "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

MCL 750.349b.

Thus, to prove unlawful restraint under MCL § 750.349b, "the facts must show beyond a reasonable doubt that the accused either: (1) forcibly restricted a person's movements or (2) forcibly confined a person so as to interfere with that person's liberty." *Phillips*, 2013 WL

311110 at *3. "In addition, the restraint must be done 'without the person's consent or without lawful authority.'" *Id.* (quoting MCL § 750.349b). "[B]oth methods of restraint require proof of some quantum of force—i.e., forcibly restrict or forcibly confine." *Id.* "[F]or purposes of unlawful imprisonment, sufficient 'force' can constitute any use of strength or power exerted upon a person in order to restrict that person's movements or to confine that person in a manner that interferes with the person's liberty." *Id.* Finally, "[r]estraint by weapon [under subsection (1)(a)] includes the use of a weapon to induce fear and discourage attempts to leave." *People v. Washington*, No. 304611, 2013 WL 2224084, at *2 (Mich. Ct. App. May 21, 2013).

In the present case, the government relied primarily upon subsection (1)(a) of MCL § 750.349b to establish unlawful restraint, but also argued that Anderson's actions could qualify under subsection (1)(c). Anderson argues that the district court erred in concluding that the government showed by a preponderance of the evidence that Hollis and her daughter were "restrained" at all. Further, he asserts that there was insufficient proof that he used a weapon to accomplish any alleged restraint or to facilitate the commission of another felony; the evidence showed that he never threatened Hollis and her daughter with his hand gun or implied that they would deny him transportation at their own peril. The only time the gun was seen or mentioned was when it twice fell from Anderson's pocket; although he admittedly possessed the gun, he did so awkwardly, did not point it at the passengers, and obeyed Hollis's request to leave the gun on the floor of the car because her daughter was in the back seat. Anderson therefore contends that his actions are not tantamount to the use of a weapon to induce fear and discourage attempts to leave.

We disagree. The district court properly held that the government proved by a preponderance of the evidence that Anderson unlawfully restrained his victims in these

circumstances. Under MCL § 750.349b(1)(a), Anderson's conduct fulfilled the requisite elements of the statute. First, he knowingly restrained Hollis and her daughter by holding the firearm in his hand and instructing Hollis that if she complied with his demand to drive her to "the old neighborhood," he would not hurt her. Following this implied threat, Anderson got into Hollis's car without her permission, still armed with the handgun. Hollis's liberty was restrained at that point. The record reflects that not only did she feel that if she ran, he might start shooting at her, but her minor child was in the backseat of the car. Hollis had every reason to believe that Anderson might make good on this threat because she knew that he had a violent temper. Consequently, she complied with Anderson not out of free will but out of fear for herself, her child, and Wilson. In light of Anderson's statements while holding a firearm and directing the victims to get in their car and drive him, it is clear that he intended to keep them in his custody until they complied with his demand to drive them across town.

Anderson's attempt to characterize the encounter as a cordial exchange falls flat. Both Hollis and her daughter told authorities that they got into the car with Anderson because they were scared and he had a gun. Moreover, after watching Anderson interact with Hollis and her child, Mykal Wilson was so concerned about the situation that she called the police and followed Hollis's car, flagging down the Border Patrol and excitedly announcing that Anderson had taken Hollis and her daughter hostage.

The present facts closely resemble *People v. Johnson*, Nos. 302505, 302506, 2012 WL 934720 (Mich. Ct. App. Mar. 20, 2012), in which the Michigan Court of Appeals affirmed a conviction for unlawful imprisonment where the defendant, who had just committed an unarmed robbery at a Walmart store, ran up to the victim's car in the parking lot. *Id.* at *1. The defendant got into her vehicle without permission, locked the doors, and told the victim to "go, go, go." *Id.*

Fearful that he had a gun (although he did not), she drove him away from the store. In upholding

the conviction, the court explained:

> He clearly intended to confine the victim to the car and to force her to drive. While the victim could have unlocked the doors, by locking the doors defendant impeded her ability to exit and forced her to remain in the driver's seat. While unlocking the doors would have taken only a moment, restraint does not require any particular length of time [under MCL § 750.349b(3)(a)]. We also note that while refraining from physical force, defendant exploited the situation to confine the victim to her car. Particularly, the victim's baby was in the backseat strapped in a car seat, and exiting would have required the victim to leave her daughter in the car. Also, while defendant did not have a weapon, based upon his placement of his hands, the victim feared he might be armed. Finally, defendant told the victim he was being chased by someone trying to kill him. In actuality, he was being pursued by Wal-Mart security personnel. This lie led the victim to believe there was a danger of violence outside the car and compelled her to follow defendant's orders. Considering the evidence in a light most favorable to the prosecution we conclude the evidence was sufficient to establish defendant's restraint of the victim.

*Id.* (citation omitted). *See also People v. Neal*, No. 314788, 2014 WL 2795865, at *3 (Mich. Ct.

App. June 19, 2014) ("[T]o commit the offense [of unlawful imprisonment], defendant needed

only to confine the complainant for a brief moment, and could have done so, for example, by

simply locking all the doors, taking away her cellular telephone so she could not call for help, or

threatening her harm if she tried to escape. . . . Defendant's conduct clearly went beyond the

minimum required to commit the offense.").

Here, while the record does not indicate that Anderson locked the car doors, unlike in

*Johnson*, Anderson did have a gun and did threaten Hollis and her daughter. And, as in *Johnson*,

if Hollis tried to run away, she would have had to abandon her minor child in the backseat.

In sum, the district court properly applied the enhanced base offense level under

§§ 2K2.1(c)(1)(A) and 2A4.1 because the government provided sufficient evidence that

Anderson possessed his firearm "in connection with the commission or attempted commission of

another offense," that is, the offense of unlawful imprisonment of Hollis and her daughter under Michigan law, MCL § 750.349b(1)(a). The district court's corresponding low-end Guideline sentence of 108 months of imprisonment was procedurally reasonable.

III.

For these reasons, we affirm the judgment of the district court.