NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0519n.06

Case No. 22-4031

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | **FILED** Dec 13, 2023 KELLY L. STEPHENS, Clerk |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| MARWAN LAMAR LAMB, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

STEPHANIE D. DAVIS, Circuit Judge. Toledo police officers arrested Defendant Marwan Lamb after responding to a 911 call from the mother of two of his children reporting that he had assaulted her. Lamb was found near the location where the caller indicated he would be, and he fit the description she had provided. In his front pocket, Lamb, a convicted felon with multiple prior domestic-violence convictions, had a 9mm semi-automatic pistol. A grand jury indicted Lamb on two counts of illegally possessing a firearm and he subsequently pleaded guilty to both counts. At sentencing, the district court applied a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6), after finding that Lamb possessed the firearm in connection with a felony domestic-violence offense. With the sentencing enhancement, the district court calculated Lamb's Guidelines range as 41 to 51 months and sentenced him to 51 months' imprisonment. On appeal, Lamb challenges the procedural and substantive reasonableness of his sentence, arguing that the district court erred when it made the factual determination that he

committed felony domestic violence. Because we find that the district court satisfied both procedural and substantive reasonableness requirements in imposing its sentence, we affirm.

I.

*Background.* On December 5, 2020, L.W.[1] placed a 911 call from a Toledo residence to report that Lamb, the father of her children, had beaten her with a gun. During the call, L.W. confirmed that she required medical attention, informed the emergency dispatcher that Lamb was no longer at her present location, and described his physical appearance and what he had been wearing. In short order, Toledo police officers responding to the call found Lamb near L.W.'s residence, arrested him, and discovered a firearm in his front pocket during a search of his person. Officers then interviewed L.W. about what happened. She told them that Lamb had beaten her with a gun because he was displeased with her performance of a sexual act. Consistent with her report of having been struck, on first seeing L.W., one of the officers remarked that she had a "knot" on her head. Based on her description of what happened, officers suspected that L.W. had been sexually assaulted. They therefore suggested that she obtain a medical examination at a hospital. But she declined, explaining that she had already taken a shower and brushed her teeth.

A few days later, while detained at a local jail following his arrest, Lamb called an unidentified male—an apparent friend or relative—and asked him to place a three-way call to L.W. During the three-way call, Lamb asked L.W. to provide him with bond money before his pending state charges[2] from the December 5, 2020 incident attracted the attention of federal prosecutors. L.W. refused, telling him, "you shouldn't have never beat me with the gun," and ended the call.

---

[1] "L.W.," which we use throughout this opinion, refers to the complaining witness who called 911 on December 5, 2020, to report that she had been assaulted by Lamb.

[2] According to the police report, Lamb was charged with domestic violence under Ohio Rev. Code Ann. § 2919.25, a third-degree felony, which was later dismissed.

Lamb asked his friend to place a second three-way call to L.W., and he again asked her for bond money, reiterating that he could face significant prison time. L.W. noted that he did not listen to her when she was begging and pleading for him not to hit her and ended the call.

In February 2021, just as Lamb feared, a federal grand jury indicted him on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and one count of possessing a firearm as a domestic-violence offender in violation of 18 U.S.C. §§ 922(g)(9), 924(a)(2). The latter charge was premised on Lamb's prior conviction for domestic violence. On September 20, 2021, Lamb pleaded guilty to both charges.[3] The presentence investigation report ("PSR") included information indicating that Lamb possessed the firearm in connection with another felony offense—felony domestic violence— and thus applied a four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(6). After factoring in this enhancement and affording credit for Lamb's acceptance of responsibility, the PSR calculated a total offense level of 15 and a criminal history category of VI, which resulted in a sentencing range of 41 to 51 months under the Guidelines. Lamb objected to the four-level enhancement, asserting that the December 5, 2020 incident did not involve felony domestic violence.

Sentencing proceedings began on March 7, 2022 via videoconference and proceeded over the course of several months. Although subpoenaed, L.W. ultimately did not appear as a witness. The parties agreed to proceed with other evidence, including testimony from defense counsel's investigator, who had interviewed L.W. on February 9, 2022 about the charged conduct—more than one year after its occurrence. The investigator testified that L.W.'s February 2022 account of the December 5, 2020 incident differed from her original statement to police on the day of the

---

[3] During the sentencing hearing, the district court dismissed Count 2, which charged Lamb with being a domestic violence offender in possession of a firearm, because his firearm possession could not support both counts for double jeopardy reasons.

incident. In particular, L.W. indicated to the investigator that she had not performed any sex act on Lamb. Instead, she relayed that she had been intoxicated, suicidal, and in initial possession of the gun that day. Lamb attempted to take the gun from her to prevent L.W. from harming herself, and, in so doing, a "scuffle" ensued between the two during which Lamb hit L.W. on the side of the head with the gun—apparently by mistake. The investigator also testified that L.W. stated that she had previously attempted suicide and that Lamb had "helped her in the past." Nevertheless, after Lamb secured the gun and left L.W.'s residence, she called 911 because she was "mad" about "what he did."

Because the investigator provided information about the charged conduct that was "brand new" to the government, it sought a continuance to respond, which the court granted. During the continuance, the government filed a sentencing memorandum and four exhibits, which included body-camera footage from officers who had responded to the December 5, 2020 incident, L.W.'s 911 call, and the December 8, 2020 jail call.

The sentencing hearing resumed on December 9, 2022. During cross-examination of Special Agent Courtney Anderson of Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), defense counsel questioned him about an audio recording of an interview of L.W. conducted by Special Agent Anderson and an Assistant United States Attorney ("AUSA") on March 10, 2022. During the interview, L.W. informed Anderson and the AUSA that she could not "tell [them] the exact story" of what had occurred on December 5, 2020 due to serious health problems presumably affecting her memory. She also admitted that she had been intoxicated during the incident and stated that she was intoxicated at the time of the interview. Although she offered little other information about the incident, she repeatedly stated that Lamb had "saved [her] life" on December 5, 2020, effectively recanting her original report for a second time.

After hearing the evidence from the parties and reviewing the PSR, the district court found L.W.'s initial accusation more credible than her later recantations and determined "the clear weight of the evidence, is that, without cause or provocation, [Lamb] struck [L.W.] with the firearm intending to cause her harm." That she had been intoxicated during the incident, the court reasoned, was immaterial to this finding. Based on this finding, the district court applied a four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(6); it concluded that the government had proved "by more than a preponderance" of the evidence that Lamb, not only illegally possessed a firearm, but also "hit [L.W.] on the head with it." Doing so rendered Lamb's use of the firearm to be in connection with felony domestic violence.

In imposing Lamb's sentence, the district court discussed Lamb's long history of domestic-violence charges, noting that it had "never seen a presentence report that recites the variety, the repetitious nature of the number of victims with the serious and brutal nature in many of those instances of what we loosely refer to as a domestic violence as contained in this report." Because previous periods of incarceration did not seem to deter Lamb from his "consistent history and pattern of physically assaulting, beating, [and] striking women," the district court questioned what sentence length would deter Lamb from illegally possessing a firearm and harming others in the future. The district court openly considered applying an upward departure from the Guidelines range, but ultimately imposed a 51-month, within-guidelines sentence, reasoning that this sentence was sufficient but not greater than necessary to effectuate the purpose of protecting others in the community.

Lamb appeals. He argues that the district court erred in relying on L.W.'s inconsistent statements about his conduct in applying the sentencing enhancement under § 2K2.1(b)(6). He

also challenges the substantive reasonableness of his sentence, arguing that district court violated his constitutional rights when it relied on judge-found facts to impose it.

II.

We have jurisdiction to review Lamb's sentence under 28 U.S.C. § 1291. *See e.g.*, *United States v. Shanklin*, 924 F.3d 905, 912 (6th Cir. 2019). "A district court's sentencing decision must be procedurally and substantively reasonable." *United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022). Procedural reasonableness focuses on the method that the district court used to arrive at the length of a sentence while substantive reasonableness considers whether the length of the sentence itself is reasonable given the "totality of the circumstances." *Id.* A challenge to a district court's calculation of a defendant's Guidelines range is a question of procedural reasonableness. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014). There is a nuance in our case law regarding the standard for reviewing a district court's application of the § 2K2.1(b)(6)(B) enhancement. *See United States v. Taylor*, 648 F.3d 417, 430–31 (6th Cir. 2011). Typically, we review a district court's Guidelines calculations and factual findings for clear error and its legal conclusions de novo; however, in the specific context of § 2K2.1(b)(6), "we review the district court's factual findings for clear error and accord 'due deference' to the district court's determination that the firearm was used or possessed 'in connection with' the other felony, thus warranting the application of the . . . enhancement." *Seymour*, 739 F.3d at 929 (quoting *Taylor*, 648 F.3d at 432). This is because cases applying this standard tend to involve challenges to whether the nexus requirement of §2K2.1(b)(6) has been met, as we have here. *Shanklin*, 924 F.3d at 919 (quoting *Taylor*, 648 F.3d at 431) ("[W]hen a defendant 'challenges the district court's determination that the firearm was used or possessed "in connection with" the [other felony offense]—i.e., that there was a nexus between the firearm and the felony—,' that inquiry is

necessarily 'fact-specific' and thus better examined by the district court."). As it stands, we need not resolve the question of which standard of review applies here because Lamb's challenge fails under any applicable standard. As for a sentence's substantive reasonableness, we review for abuse of discretion. *United States v. Brooks*, 628 F.3d 791, 795 (6th Cir. 2011).

### III.

*Procedural Reasonableness*. Lamb first challenges the procedural reasonableness of his sentence. He argues that the district court erred when it applied the four-level enhancement under § 2K2.1(b)(6) because the government did not show by a preponderance of the evidence that he used the firearm at issue in connection with felony domestic violence.

The § 2K2.1(b)(6) enhancement increases a defendant's base offense level by four if the defendant "used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Specifically, this enhancement is activated if the firearm "facilitated" or "had the potential of facilitating," another felony offense. *Id*. cmt. n.14(A). "Another felony offense" includes "any Federal, state, or local offense . . . punishable for a term of imprisonment exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id*. cmt. n.14(C). "The burden of proof for this enhancement falls on the government." *United States v. Mukes*, 980 F.3d 526, 533 (6th Cir. 2020). "The enhancement is not warranted if possession of the firearm 'is merely coincidental to the underlying felony offense.'" *Seymour*, 739 F.3d at 929 (quoting *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009)).

Here, the parties agree that if the district court found that Lamb struck L.W. with a firearm on December 5, 2020, "without cause or provocation" and with the intention "to cause her harm," then such a finding would qualify his conduct as felony domestic violence. *See* Ohio Rev. Code § 2919.25; (R. 62, PageID 359-60). Lamb contends that the evidence in the record is insufficient

to support the district court's findings. In particular, he objects to the district court's reliance on L.W.'s initial statements to the 911 dispatcher and the responding police officers. According to Lamb, courts may not rely on statements from 911 calls and police reports to resolve disputed facts because these pieces of evidence are not sworn testimony and were designed for investigative purposes, not, presumably, adjudicative purposes. He reasons then that, without corroborating evidence, L.W.'s December 5, 2020, statements cannot show by a preponderance of the evidence that he assaulted her since she later recanted her accusations on at least two separate occasions. Lamb says the district court did not adequately address these recantations and overlooked other inconsistences in L.W.'s December 5, 2020 interview—namely, (1) her refusal to travel to the hospital despite confirming her need for medical attention during the 911 call and (2) her claim that she had taken a shower and brushed her teeth in response to law enforcement's suggestion that she obtain a medical examination in light of their understanding that she may have been sexually assaulted. Lamb also faults the district court for not considering the effect of L.W.'s refusal to testify in court and contends that, given her intoxication claims, no factfinder could determine whether her initial accusation or later recantations were more credible.

We find no clear error in the district court's reliance on L.W.'s initial statements to find that Lamb struck her with a firearm on December 5, 2020. Contrary to Lamb's contention, district courts may make credibility determinations and resolve factual disputes at sentencing based on 911 calls, statements arising from police reports, and hearsay evidence generally. *United States v. Armstrong*, 920 F.3d 395, 397–98 (6th Cir. 2019) (upholding a district court's credibility determination based on out-of-court statements); *see also United States v. Santana*, 723 F. App'x 331, 337 (6th Cir. 2018) ("[H]earsay is permissible at a sentencing hearing so long as it has some minimum indicia of reliability.") (quoting *United States v. Darwich*, 337 F.3d 645, 656 (6th Cir.

2003)); *United States v. Rice*, 844 F. App'x 844, 847 (6th Cir. 2021). When considering such evidence, the district court need only show "some evidentiary basis" to satisfy a "minimal indicium of reliability." *Armstrong*, 920 F.3d at 398. That standard is met here. The district court considered L.W.'s 911 call and body-camera footage capturing her initial interview with police. Based on this evidence, the district court found that (1) L.W. was aware that Lamb possessed a gun, (2) she suffered a definite injury based on the visible knot on her head, and (3) she placed the 911 call shortly after Lamb left her residence. Accordingly, the district court determined that the "logical sequence" of events unfolded as L.W. had initially reported: Lamb struck her with a gun because he was displeased with her performance of a sexual act. The injury to L.W.'s head is visible in the video recording of her initial interview, and officers noted that there was blood on Lamb's coat when they discovered the gun on his person during the arrest. While these facts might not be dispositive, they do corroborate L.W.'s out-of-court statements. We find that this evidence meets the "low hurdle" required to satisfy the indicium-of-reliability standard because, taken together, it shows that Lamb likely used the firearm at issue to cause L.W. harm without provocation. *Armstrong*, 920 F.3d at 398. Additional corroborating evidence supports this finding; a recorded jail call placed a few days after the incident captured L.W. twice accusing Lamb, directly, of beating her with a gun. The district court was permitted to take these facts into consideration in determining whether the government met its burden, and we see no reason to disturb its findings in that regard.

Lamb's remaining arguments also do not lead us to find any reversible error. First, we disagree with his assertions that the district court failed to adequately address L.W.'s recantations and other alleged inconsistencies. When discussing the applicability of the four-level enhancement at the sentencing hearing, the district court expressly noted L.W.'s recantations as well as the

considerable time that had elapsed between the incident and her later disavowals. It also considered, on the record, her refusal to obtain a medical examination for evidentiary purposes and determined that this information simply did not outweigh the evidence discussed above. Although Lamb may have appreciated a more detailed discussion about L.W.'s recantations and other alleged inconsistences, the district court was not required to say more because there was "some evidentiary basis to satisfy a minimal indicium of reliability" that Lamb struck L.W. with a firearm intending to injure her. *Armstrong*, 920 F.3d at 398. We do not find fault with the district court's straightforward and concise explanation under the highly deferential standard applied here. Second, we are not persuaded by Lamb's suggestion that L.W.'s refusal to testify in court should affect this outcome because, as he concedes, "[a] witness need not appear, so long as reliable evidence, like a 911 call or police reports, supports the testimony." (Dkt. 19, PageID 19) (citing *United States v. Ford*, 571 F. App'x 378, 383 (6th Cir. 2014)). Lastly, we are not convinced that L.W.'s admitted intoxication precluded the court from determining her truthfulness. To begin, Lamb offers no authority to substantiate this argument. Moreover, the court had the opportunity to review both the audio from the 911 call and the video from L.W.'s initial interview with first responders to make its own assessment of L.W.'s state of mind and credibility. As mentioned, the district court was permitted, and better positioned than we are, to resolve this factual question. In so doing, the district court considered whether L.W. was being truthful on December 5, 2020 or later when she spoke with defense and government investigators, and we are loath to second-guess its decision in that regard. *Shanklin*, 924 F.3d at 919–20. The district court found her account during the former more credible and stated its reasons as to why. We examined these reasons and are not left with a firm and definite conviction that any error was made. *Armstrong*, 920 F.3d at 398.

IV.

*Substantive Reasonableness.* Lamb lastly argues that his 51-month sentence is substantively unreasonable because the district court imposed it based on judge-found facts rather than a jury verdict or an admission of guilt establishing the same. According to Lamb, even though current law permits district courts to consider out-of-court statements and to conduct fact-finding for sentencing purposes, "these procedures are constitutionally suspect." He forecasts the impending reversal of such procedures upon the acceptance and resolution of several petitions for certiorari pending before the Supreme Court—such as *McClinton v. United States*, No. 21-1557, in which the defendant argues that the use of acquitted conduct at sentencing violates a defendant's right to trial by jury under the Fifth and Sixth Amendments. Lamb asserts that same reasoning extends to proof of uncharged crimes, as relevant here, and thus urges the court to hold his appeal in abeyance until the Supreme Court decides *McClinton*.

We deny his request as moot because the Supreme Court has denied certiorari in *McClinton* since the filing of Lamb's appeal, *see McClinton v. United States*, 143 S. Ct. 2400 (2023). We note that several members of the Court expressed certain reservations. *Id.* at 2403 ("The Court's denial of certiorari today should not be misinterpreted. The Sentencing Commission, which is responsible for the Sentencing Guidelines, has announced that it will resolve questions around acquitted-conduct sentencing in the coming year.") (Sotomayor, J.) (internal footnote omitted). Regardless, these reservations are not enough to save L.W.'s argument even if it presents some legitimate constitutional concerns. We have held that "judicial fact-finding in sentencing proceedings [under] a preponderance of the evidence [standard] . . . does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury." *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). We are bound by this precedent unless and until the

- 11 -

Supreme Court or this court, acting en banc, rules otherwise or until the Sentencing Commission makes some Guidelines change. Because Lamb makes no other argument regarding the substantive reasonableness of his sentence, we presume that it is reasonable because it falls within the Guidelines range. *Rita v .United States*, 551 U.S. 338, 354–55 (2007).

V.

For the foregoing reasons, we affirm.